

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2006

# USA v. Haas

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1191

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Haas" (2006). *2006 Decisions.* Paper 902.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/902

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1191
_____

UNITED STATES OF AMERICA

v.

WILLIAM MARTIN HAAS,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cr-00271)
District Judge:  Honorable Arthur J. Schwab

_____

Argued February 13, 2006
Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed June 14, 2006)

Karen S. Gerlach
Renee Pietropaolo (Argued)
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA  15222
        *Attorneys for Appellant*

Laura S. Irwin (Argued)
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, PA  15219
        *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

William Haas was convicted by a jury in the United States District Court for the

Western District of Pennsylvania of a single count of gun possession in violation of 18

U.S.C. § 922(g). Haas was sentenced to twenty-four years' imprisonment, and now

appeals his conviction and his sentence. We have jurisdiction under 28 U.S.C. § 1291

and 18 U.S.C. § 3742. We hold that the District Court misapplied the Federal Rules of

Evidence and allowed evidence to be introduced against Haas that should not have been.

We will vacate Haas's conviction and remand for a new trial.

## I.

Haas was on parole in March 2003, and on the 21st he visited his parole office in

Pittsburgh for a routine urine test. Haas, who had been using heroin, had come a day late

to avoid seeing his assigned parole officer, but to no avail: the officer supervising the test

caught Haas attempting to substitute a vial of urine for his own sample. Haas admitted

that he was using heroin, and was placed under arrest for violating his parole. Several

officers then proceeded to the parole office parking lot to search Haas's pickup truck. In

the truck sat Paul Daniel Meyers, with a pistol next to him on the seat and ammunition for

it in his pockets. In the back of the truck, in a toolbox, the officers found another pistol, along with a wig, sunglasses, and work gloves.

These latter items took on enhanced importance in light of the story told by Meyers upon his own arrest for gun possession. Meyers claimed that two days earlier, he and Haas had robbed Frank and Shirley's Restaurant in Pittsburgh. Meyers, according to his story, was the getaway driver, while Haas was the gunman. Haas, wearing the wig, sunglasses, and gloves, had reached into the drive-through window to rob the cashier, while Meyers, undisguised, drove the getaway car. Haas, said Meyers, had held the gun found in the toolbox.

Meyers pled guilty to state robbery and gun possession charges, and served ten months in jail. Haas, by contrast, was indicted on the federal charges on November 19, 2003. The indictment alleged that Haas possessed the gun "on or about March 21, 2003." The November indictment made no mention of the March 19th robbery.

Pursuant to Federal Rule of Evidence 404(b), the government notified Haas that it planned to introduce the March 19th robbery, as well as a 1991 robbery with a similar modus operandi for which Haas had been convicted, as evidence of Haas's possession of the gun. The government argued that evidence that Haas had used the gun in the March 19th robbery would disprove Haas's claim that the gun belonged to Meyers, that the robbery "completed the story" of Haas's possession, and that the similarities between

the 1991 robbery and the March 19th robbery would refute Haas's claim of innocence of the latter.

Haas moved in limine to exclude evidence of both robberies. The government responded that the 1991 robbery shared a modus operandi with the March 19th robbery, strengthening Meyers' testimony that Haas wielded the gun during the March 19th robbery. Furthermore, the wig found with the gun in the bag in the toolbox could be linked to Haas by his girlfriend's testimony and by DNA evidence, and the restaurant cashier, Manfredo, would testify that the robber who used the gun wore a wig. Manfredo identified Meyers as the getaway driver, and her description of the other robber's disguise and gun was consistent with the items found in Haas's truck. Thus, argued the government, the combination of Manfredo's testimony, Meyers' testimony, and the wig combined to make out a possession case against Haas.

The District Court granted Haas's motion to suppress evidence of the 1991 robbery, but ruled the March 19th robbery admissible. The District Court found that the March 19th robbery was "intrinsic" evidence of the charged crime. At trial, witnesses testified in detail about the robbery, and the government laid particular stress on it in closing.[1]

---

[1]"Remember Ms. Manfredo's reaction when I pulled this gun out, handed it to her. Put it up on the stand. Do you remember her reaction to it? Remember, she gasped, became uneasy. She immediately wanted to turn away from that gun and not want to look at it." (App. 417 (Trial Transcript, July 21, 2004).)

4

At argument, this Court asked the government why it did not charge Haas with possessing the gun on the 19th, the date of the robbery, since its case rested so heavily on the events of that day. The government candidly admitted that it could not make out a case for possession on the 19th because it could not prove that Haas was the gunman in the robbery. The government's primary witness, Meyers, was highly impeachable: a drug addict with a long criminal history, he had been facing the same legal jeopardy as Haas, but had avoided federal charges altogether and served only ten months. Meyers's veracity was admittedly malleable: he testified that he would have told the police whatever he thought would help him. And the government's only other witness to the robbery, Kimberly Manfredo, the cashier, could testify that she had been robbed by two men, but could identify only Meyers, and not Haas, as one of the robbers. Accordingly, Haas was charged only with possessing the gun "on or about March 21, 2003," the date the gun was found in Haas's truck.

Without evidence of the robbery, the government would have been forced to argue constructive possession based on Haas's control over his truck, and Haas's defense – that the gun found in the toolbox belonged to Meyers – might have been effective. There was, after all, no direct physical evidence, such as fingerprints, connecting Haas to the gun, and there was considerable doubt as to whether the toolbox had actually been locked as the government contended. In any event, the keys had been in the truck during the entire time Haas was in the probation office, so Meyers had ready access to the toolbox.

5

The robbery, in sum, was central to the case against Haas, and we cannot conclude that it is "highly probable" that its introduction "did not affect the outcome of the case." If the District Court's ruling admitting the robbery as "intrinsic" evidence was error, therefore, it was not harmless. *See Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 411 (3d Cir. 2006) (citing *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005) (citing *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924 (3d Cir. 1985)).

Nor can we agree with our dissenting colleague that this is a plain error case. Plain error review applies when an issue is raised on appeal that was not brought to the attention of the trial court. *See*, *e.g.*, *Collins v. Alco Parking*, No. 05-2802 at *5-7, 2006 U.S. App. LEXIS 12525 (3d Cir. May 22, 2006) (Becker, J.). That certainly was not the case here. Haas filed a motion in limine objecting to the admission of the March 19th robbery evidence, the government filed a response, and the court considered their arguments and issued an opinion. We have held repeatedly that the filing and denial of a motion in limine in such circumstances "relieves a defendant of his need to make contemporaneous objections in order to preserve an issue on appeal." *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005) (citing *Gov't of the V.I. v. Joseph*, 964 F.2d 1380, 1384-85 (3d Cir. 1992) (citing *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985) (holding issue raised in limine preserved because "counsel . . .filed a written pretrial motion [on the issue, which] set forth reasons, including case citations, in support of the request[, and t]he trial court held

6

a hearing at which it considered the arguments of counsel and made a definitive oral ruling with no suggestion that it would reconsider the matter at trial"))).

## II.

The government argues two theories of admissibility on appeal. First, the government argues that the robbery should come in under Rule 404(b), in order to show, inter alia, knowledge or absence of mistake with respect to the ownership of the gun. Second, the government argues that the robbery does not fall under 404(b) at all, because it was "inextricably intertwined" with Haas's possession of the gun two days later, and "completes the story" of the charged crime. As authority for the propositions that evidence "inextricably intertwined" with, or that "completes the story" of, the charged offense, does not come under 404(b), the government cites cases from the Eleventh Circuit.[2] However authoritative these cases may be in the Eleventh Circuit, the interpretation of 404(b) adopted by that Circuit does not control the law of this one.

Our standard of review of evidentiary rulings depends upon the nature of the ruling. "To the extent that our review of the district court's Rule 404(b) ruling requires us to interpret the rules of evidence our review is plenary, but, if the evidence could [be] admissible in some circumstances, we . . . review the district court's decision to admit

---

[2](*See* App. 106b-c (Government's Response to Defendant's Motion in Limine to Exclude Evidence) (citing *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983); *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992); *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982)).)

evidence of prior 'bad acts' under Rule 404(b) for an abuse of discretion." *United States v. Daraio*, No. 05-2460 (3d Cir. Apr. 10, 2006) (citing *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003)). This case implicates both the District Court's interpretation of the rule and its evaluation of evidence under the rule.

We considered the "inextricably intertwined" doctrine and the "completes the story" doctrine in *United States v. Cross*, 308 F.3d 308 (3d Cir. 2002). We declined the government's invitation to adopt either doctrine, calling them, respectively, "a definition that elucidates little," and "a definition so broad that it renders 404(b) meaningless." *Id.* at 320. Instead, we insisted on a significantly closer connection for exemption from 404(b). Rather than "intertwined," evidence must "directly prove the charged [offense]" to escape the rule. *Id.*

*Cross* was a conspiracy case, and thus the scope of the acts which constituted the offense was much broader than in this case. The defendants, state court personnel, were charged with conspiring to fix cases to engineer guilty verdicts. There was evidence that they also conspired to fix some cases in defendants' favor, and the government argued that this evidence should be exempt from 404(b) on the grounds that it "completed the story" of the defendants' crimes. We held that this latter evidence "d[id] not directly prove" the charged offense, "and thus by any definition [was] not 'intrinsic' to the [charged] offense." *Id.*

In this case, the District Court stated that it "agreed with the government" that the robbery on the 19th was "direct, intrinsic evidence of [Haas's] possession of the .357 Magnum." Under *Cross*, evidence is "intrinsic" if it directly proves the charged offense. The charged offense was possession of the gun on the 21st, not the 19th. Whatever probative value the evidence about Haas's activities on the 19th may have had, it did not directly prove that Haas possessed the gun on the 21st. To hold otherwise would be to strip the words "directly prove" of all meaning. The District Court erred, therefore, and the only route to admissibility for the robbery evidence is through 404(b).

Accordingly, we will consider four factors: whether the robbery evidence (1) was introduced for a permissible purpose, (2) was relevant, (3) satisfied Rule 403 (i.e., was not substantially more prejudicial than probative), and (4) was accompanied by a limiting instruction that the jury not use the evidence for an improper purpose. *See Cross*, 308 F.3d at 321. The first two steps are straightforward. The robbery evidence satisfied at least two of the legitimate purposes suggested in 404(b): knowledge, and absence of mistake. If Haas had used the gun two days earlier while wearing gloves and a wig, it is more likely that its presence in his truck, in a bag with gloves and a wig, was due to its being his gun, than to its having been secreted there without Haas's knowledge. Because the robbery evidence makes it more probable that the gun was Haas's, the robbery evidence is relevant. *See* Fed. R. Evid. 401.

9

The second two steps are more problematic. The District Court did not balance the probative value of the robbery evidence against its prejudicial effect as required under Rule 403. It admitted the evidence solely upon the determination that it was "intrinsic." Though this determination was error, we emphasize that even "intrinsic" evidence is subject to Rule 403 balancing. As we explained in *Cross*,

> Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." It creates a presumption of admissibility. *United States v. Universal Rehabilitation Servs. (PA)*, 205 F.3d 657, 664 (3d Cir. 2000) (en banc) (citations omitted). Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect "substantially outweighs" its probative value. Fed. R. Evid. 403. As one example, when evidence is highly probative, even a large risk of unfair prejudice may be tolerable.

*Cross*, 308 F.3d at 323. Even highly probative evidence is subject to balancing. Of course, as we noted, the more probative the evidence, the greater the degree of prejudice that can be tolerated. But the court is still obligated to undertake that balancing inquiry. The failure to do so here was error.[3]

Finally, no limiting instruction was given. It does not appear from the record that one was requested, and Haas conceded at oral argument that he did not request an instruction, as contemplated by Rule 105. However, we agree with Haas that in light of

---

[3]We leave it to the District Court on remand to conduct this balancing in the first instance.

10

the District Court's ruling that the robbery evidence was "intrinsic" to the charged offense and thus exempt from 404(b), it would have been futile to request a limiting instruction under that rule.

We think Haas is entitled to a trial in which his attorney can seek to limit prejudicial evidence under the Federal Rules of Evidence. On remand, the robbery evidence, if proffered, will be considered under 404(b), and the District Court will balance its probative value against its prejudicial effect. If requested, the District Court will give a limiting instruction restricting consideration of the robbery evidence to any permissible purposes for which it was admitted.

## III.

For the foregoing reasons, we will vacate the judgment of conviction and sentence, and remand the case to the District Court for proceedings consistent with this opinion.[4]

Barry, Circuit Judge, dissenting

This is, in my view, a "plain error" case in which, if error there be, it surely is not "plain." I respectfully dissent.

Twelve days before trial, the District Court ruled on a motion in limine that the robbery of Frank and Shirley's was admissible as direct evidence that Haas had violated

---

[4]Because we are vacating Haas's conviction, his sentencing-related claims are moot, and we do not address them.

11

18 U.S.C. § 922(g)(1), the crime with which he was charged. No limiting instruction was thereafter sought – not pretrial, not during trial. Neither was any objection made to the superseding indictment with its "sentencing allegations," allegations calling for the same evidence of the robbery: the testimony of Meyers and Manfredo that the wig, sunglasses, gloves, and, indeed, the gun found in Haas's truck on March 21 were those used at Frank and Shirley's two days earlier.

Given these failures, our review is for plain error. I see no error, much less error that is "clear" or "obvious," and I surely do not see error that "affected the outcome of the district court proceedings" or that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732-36 (1993) (citation and quotation marks omitted). I note, in this connection, that the case against Haas, even aside from the evidence of which he now complains, was powerful. His DNA was on the wig and the sunglasses found with the gun in his truck on March 21, and his explanation at trial, at least in my view, buried him. I would affirm the judgment of conviction and sentence.