

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2005

# USA v. Mussare

Precedential or Non-Precedential: Precedential

Docket No. 02-3301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Mussare" (2005). *2005 Decisions.* Paper 1266.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 02-3301

UNITED STATES OF AMERICA,

v.

JOHN CIOFFI MUSSARE, III,
a/k/a J.J.

John Cioffi Mussare, III,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 00-cr-00281-2)
District Judge: Hon. Malcolm Muir

Argued May 27, 2004

BEFORE: RENDELL and COWEN, Circuit Judges and
SCHWARZER*, District Judge

(Filed April 28, 2005)

*Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by
designation.

Peter Goldberger, Esq. (Argued)
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

Counsel for Appellant

Theodore B. Smith, III (Argued)
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

John J. McCann, Esq.
Office of the United States Attorney
240 West Third Street, Suite 316
Williamsport, PA 17701

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge

John Cioffi Mussare, and a co-defendant, William R. Bruce, III, were charged in an indictment with various drug and extortion crimes. They were convicted of one count of conspiring to distribute marijuana, as well as two counts of using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894. Mussare appeals, raising various constitutional and evidentiary challenges to the extortion convictions.[1] He also appeals his sentence. We will affirm.

---

[1]This appeal arose out of the same incident underlying United States v. Bruce, 02-3316. The cases were consolidated for

# I.

On January 21, 2000, Clinton James Taylor, Bruce, and Mussare met at an all-night party in Williamsport, Pennsylvania. At some point during the evening, Bruce and Mussare expressed an interest in obtaining marijuana, and Taylor indicated that his roommate, Jim Kane, might have some. On Saturday, January 22, Bruce and Mussare accompanied Taylor to his apartment. Kane did not have any marijuana, but either Taylor or Kane suggested that they could get some if Bruce and Mussare provided the money. Bruce then gave Kane $115 for the purpose of buying drugs.

Kane gave the money to Taylor, who used it to buy seven bags of heroin. Kane and Taylor intended to resell the heroin, make a profit, and use the proceeds to buy marijuana for Bruce and Mussare. It is unclear whether Mussare and Bruce knew of the heroin buying scheme, but they were present at the apartment when Taylor left with the money and when he returned with the heroin. Kane and Taylor then consumed some of the heroin themselves, after which Kane left to sell the remaining bags. Mussare and Bruce remained at the apartment, waiting for Kane to return. Kane was unable to sell the remaining bags of heroin, and did not return that night. Mussare and Bruce left Sunday morning.

On Sunday evening, Mussare and Bruce returned to the apartment for the marijuana. Kane explained that he had been

---

the purposes of argument only. In his briefs, Bruce raised several additional constitutional challenges to the conviction. Mussare has indicated that he wishes to adopt Bruce's arguments for the purposes of his own appeal, as permitted by Rule 28(i) of the Federal Rules of Appellate Procedure. Because these cases were not consolidated for the purposes of decision, we will not discuss the substance of those arguments here. Those arguments are unpersuasive, however, and for the reasons stated in United States v. Bruce, 02-3316, we will affirm Mussare's conviction even in the face of the additional challenges.

unable to sell the heroin, and informed Mussare and Bruce that he did not have the marijuana he owed them or the money they had given him.

On Monday, January 24, 2000, Mussare, Bruce, and Taylor were together at Jason Tortelli's apartment. Several other people were also there, including David Shay. The group was drinking and smoking marijuana. At some point during the evening, Shay and Taylor were talking on the phone to Shay's girlfriend, Stacy Bardo. During that conversation, Shay punched Taylor and told Bardo that he, Bruce, and Mussare had Taylor and were looking for Kane, because he owed them money. Later in the evening, Taylor was assaulted again, this time by Bruce, who punched him in the face and kicked him repeatedly.

Around 11:00 p.m. on January 24, Tortelli told his guests to leave. Taylor, Mussare, Bruce, Shay, and Robert Confer then went to Taylor's apartment to find Kane. Kane was not there. During the course of the night, Taylor was tied up, kicked, burned with cigarettes, pistol-whipped with a paintball gun, and beaten with various objects. The letters "I M Thief" were burned onto his torso with a heated coat hanger. Shay, Mussare, and Bruce all took part in the assault. Taylor eventually offered to call his mother to obtain the money.

The next morning, Mussare and Bruce took Taylor back to Tortelli's apartment[2], where Taylor called his mother, told her that he had been beaten, and asked her for $500 so that he could pay the people who had beaten him.[3] Mussare accompanied Taylor to his mother's house, where Taylor told his mother that Mussare had nothing to do with what happened and obtained the money from her. Taylor's mother also gave Mussare five dollars in gas money for helping her son. Taylor gave Mussare the rest of the money after they returned to the car, and Mussare dropped

---

[2]There was no phone at Taylor's apartment.

[3]Taylor initially asked his mother for $100 or $200, but Mussare was standing next to him during the call and told him to get $500.

4

Taylor off at home.

Taylor eventually told his parents what had really happened. They took him to the emergency room for treatment and called the police. The police searched Taylor's apartment and found evidence of the assault.

A grand jury sitting in the Middle District of Pennsylvania returned a four-count indictment against Bruce, Mussare, and Shay, charging them with controlled substance offenses and extortion offenses. Shay began to cooperate with the government, and on April 25, 2001, the grand jury returned a superseding indictment against Mussare and Bruce only. The five count superseding indictment charged Mussare and Bruce with (1) conspiracy to possess and distribute heroin and marijuana to persons under 21 years of age; (2) aiding, abetting, and attempting to possess marijuana with the intent to distribute it to persons under 21 years of age; (3) aiding, abetting, and attempting to possess heroin with the intent to distribute it to persons under 21 years of age; (4) conspiracy to collect a debt through extortionate means; and (5) using extortionate means to collect a debt.

A jury returned a verdict acquitting Bruce and Mussare of the heroin charges, but convicting them of the extortion-related charges and conspiracy to possess marijuana. At the sentencing hearing, Mussare objected to the government's request for an upward departure based on permanent bodily injury, arguing that the departure should only be for serious bodily injury. The District Court rejected this argument and found that Bruce and Mussare had inflicted permanent bodily injury on Taylor. Mussare was sentenced to 210 months in prison and three years of supervised release. This appeal followed.

II.

A.

Mussare first argues that there was insufficient evidence to support the conviction under Section 894. Review of a

verdict for sufficiency of the evidence is plenary. <u>United States v. Rosario</u>, 118 F.3d 160, 163 (3d Cir. 1997). We will reverse a jury verdict for insufficiency of the evidence "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." <u>United States v. Anderson</u>, 108 F.3d 478, 481 (3d Cir. 1997) (citation omitted).

Section 894 provides:

> (a) Whoever knowingly participates in any way, or conspires to do so, in the use of extortionate means
>     (1) to collect or attempt to collect any extension of credit, or
>     (2) to punish any person for the nonrepayment thereof, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 894. An extension of credit is defined to mean "to make or renew any loan, or enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred." 18 U.S.C. § 891(1). Because of the disjunctive "or," if the extortionate collection of a debt involves a loan, there is no additional requirement that the parties agree to defer repayment of the loan.

The statute does not define the term "loan." The term is generally defined as "[d]elivery by one party to and receipt by another party of a sum of money upon agreement, express or implied, to repay it with or without interest." <u>Black's Law Dictionary</u> 936 (6th ed. 1990).

Mussare argues that the evidence is not sufficient to show that he and Bruce loaned any money or in any other way extended any credit to Taylor and Kane. But Taylor testified "I borrowed–asked to borrow $115 from J. J. Mussare, and it was given to Jim Kane, and then given to me to buy heroin with." (App. at 299.) He also testified that he understood that the money was to be repaid, either in cash or marijuana. (<u>Id.</u> at 300.)

6

Mussare argues that the jury's acquittal on the charges of conspiracy to possess heroin establishes that the jury rejected Taylor's testimony characterizing the transaction as a loan. However, it would not be inconsistent for the jury to acquit Mussare on the possession of heroin charge, but still believe that the transaction was a loan. It does not appear that there was any evidence that Mussare and Bruce sought the heroin for themselves or even agreed to the heroin buying scheme; they simply wanted marijuana. Alternatively, even if inconsistent, there is no requirement that a jury's verdict be consistent. See United States v. Powell, 469 U.S. 57, 62-63 (1984). We will not interpret the jury's acquittal on the heroin charge as a rejection of Taylor's testimony, and that testimony clearly provides evidence that the transaction was a loan.

We also observe that, even if a reasonable jury could not find that a loan existed, it nevertheless could reasonably conclude that there was an agreement to defer repayment of the debt Kane and Taylor owed to Bruce and Mussare. Taylor received the money on Saturday, January 22. Bruce and Mussare remained at Kane's apartment until Sunday morning, while Kane and Taylor each left the apartment, first to purchase heroin and then to try to sell it for profit. Bruce and Mussare left the apartment Sunday morning, but returned that evening for their marijuana. At that point, Kane told them that he had been unable to resell the heroin, and that he had neither the marijuana he had promised them or the money to repay them. Bruce and Mussare again left without incident. It was not until Monday evening that Bruce and Mussare assaulted Taylor. From this sequence of events, a reasonable jury could find an agreement to defer repayment of the debt. See United States v. DiPasquale, 740 F.2d 1282 , 1287 (3d Cir. 1984) ("A tacit agreement may be implied from the circumstances surrounding the creation of the debt."). As such, there was sufficient evidence to support the jury's finding that an extension of credit had been made, either because the initial payment was a loan or because an agreement to postpone the payment of a claimed debt could be inferred.

B.

7

Mussare next argues that the District Court erred in admitting certain statements made by Bruce during a gathering after the beating took place. The District Court admitted these statements under the hearsay exception for statements of a co-conspirator. Mussare argues that these statements did not qualify under that exception and that the admission of those statements violated his rights under the Confrontation Clause.

The government asserts that Mussare failed to preserve this issue through a motion in limine or objection, and that the issue is therefore waived. Mussare did refer to concerns about hearsay testimony in his motion for severance. Although we have held that a pre-trial motion in limine relieves a defendant of his need to make contemporaneous objections in order to preserve an issue on appeal, we have not held that a pre-trial motion for severance is similarly sufficient. Gov't of the Virgin Islands v. Joseph, 964 F. 2d 1380, 1384-85 (3d Cir. 1992). We need not decide that issue here. Several witnesses testified to hearing Mussare and Bruce make statements about the incident at a party the following night. Mussare objected on hearsay grounds to the testimony of two of the witnesses regarding these statements, and the District Court allowed the testimony under the co-conspirator exception. Mussare did not object to other instances of testimony about the statements, but if the previous objections did not preserve the issue as to the later testimony, we may still review the admission of the testimony for "plain errors affecting substantial rights." Fed. R. Evid. 103(d).

To establish plain error, Mussare must prove that there is '(1) error, (2) that is 'plain,' and (3) that 'affects substantial rights.'" United States v. Mitchell, 365 F.3d 215, 257-58 (3d Cir. 2004) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). If Mussare establishes these elements, we may exercise our discretion and review the forfeited error if "(4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 258 (quoting Johnson, 520 U.S. at 467)). Mussare alleges that the admission of the statements constituted a violation of his rights under the Confrontation Clause, and such a violation would constitute plain error. In addition, a Bruton violation is sufficiently severe that it would

8

seriously affect the fairness of judicial proceedings. For these reasons, we deem the issue to be properly before us.

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. The Supreme Court has interpreted this to mean that, in a joint trial, the confession of one non-testifying criminal defendant may not be used as evidence against a co-defendant. Bruton v. United States, 391 U.S. 123 (1968). We have interpreted Bruton expansively, holding that it applies not only to custodial confessions, but also when the statements of the non-testifying co-defendant were made to family or friends, and are otherwise inadmissible hearsay. Monachelli v. Graterford, 884 F.2d 749, 753 (3d Cir. 1989); United States v. Ruff, 717 F.2d 855, 857-58 (3d Cir. 1983). A hearsay statement is admissible under Bruton and its progeny, however, if it falls within a "firmly rooted" hearsay exception or is "supported by a showing of particularized guarantees of trustworthiness." United States v. Moses, 148 F.3d 277, 281 93d Cir. 1998) (quoting Idano v. Wright, 497 U.S. 805, 816-17 (1990)).

Mussare argues that Bruce's inculpatory statements do not fit under the hearsay exemption for a co-conspirator's statements because they were not made in furtherance of the conspiracy. But we may affirm on any ground supported by the record. See United States v. Jasin, 280 F.3d 355, 362 (3d Cir.), cert. denied 537 U.S. 947 (2002); United States v. Paumbo, 639 F.2d 123, 128 (3d Cir. 1981) (reversing for improper admission of evidence only after searching for other rules of evidence that would have justified the district court's decision). Here, Bruce's statements were admissible under Federal Rules of Evidence 804(b)(3), which allows the admission of any "statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."

The witnesses testified that Bruce bragged that he and Mussare had beaten and branded Taylor the evening before.

Where statements inculpate both the speaker and the defendant challenging their admission, the statements are admissible so long as they were "self-inculpatory" and not simply self-serving attempts to deflect criminal liability. Moses, 148 F.3d at 280. Nothing here suggests that Bruce was attempting to deflect liability; rather, he took credit for criminal activity. Bruce's statements unquestionably tended to subject him to criminal liability – indeed, one witness recalled that his bragging prompted an acquaintance to threaten to call the police – and were thus admissible under Rule 804(b)(3).

"[A] statement that meets the requirements of Rule 804(b)(3)" is admissible under Bruton because it "by definition possesses 'particularized guarantees of trustworthiness.'" Moses, 148 F.3d at 281. Thus, the District Court did not err in admitting the witnesses' testimony about Bruce's inculpatory statements.

C.

Mussare also objects to certain limitations the District Court placed on his cross-examination of two witnesses. He argues that the District Court unduly limited his cross-examination of cooperating co-defendant Shay regarding the deal he had made with the government. In addition, he argues that the District Court erred in restricting his cross-examination of Taylor, the victim, regarding outstanding state criminal charges.

Limitations that a district court places on cross-examination are reviewed for abuse of discretion. United States v. Chandler, 326 F.3d 210, 213 (3d Cir. 2003). The Confrontation Clause guarantees the right of a criminal defendant to confront witnesses for the purpose of cross-examination, and an important part of the cross-examination is a the exposure of the witness's biases or motivation for testifying. Delaware v. Van Ardsall, 475 U.S. 673, 678-79 (1986). Nevertheless, a district court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on

10

concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id.

In Chandler, we found an abuse of discretion when the district court substantially limited the defendant's attempts to cross-examine government witnesses regarding the sentence reductions they had received and hoped to receive in exchange for their cooperation and testimony. Id. at 216. The district court had prohibited any discussion of the penalties the witnesses would have faced if they did not cooperate. We recognized a two-part inquiry in determining whether a specific limitation violates a defendant's rights under the Confrontation Clause: (1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose. Id. We held that the proper inquiry under the first prong was "whether, if the trial court had not prohibited [the defendant] from cross-examining [the witnesses] with respect to the magnitude of the sentence reduction they believed they had earned or would earn, through their testimony, the jury 'might have received a significantly different impression of their credibility.'" Id.

In this case the District Court allowed testimony regarding the fact that Shay was initially charged in an indictment with the exact same crimes as Mussare and Bruce, and that a superseding indictment naming only Bruce and Mussare was handed down only after Shay agreed to cooperate. The District Court also allowed testimony regarding the plea deal that the government had discussed with Shay, and why he had agreed to testify for the government. Shay denied having any set deal with the government, but did say that the government would be lenient with him if he testified. Defense counsel was permitted to introduce a copy of the letter to Shay confirming the existence of an agreement to cooperate, and promising an "extremely favorable plea proposal" in exchange for his cooperation. Shay also testified that bail was initially denied in his case, but that he was released on conditions after he

11

agreed to cooperate, while Mussare and Bruce remained in jail. He testified that he hoped that, by cooperating, the government would "let the charges go back to the state, plead guilty to a simple assault for what I did, and then forward my future to the United States Marines" without serving any more jail time. (App. at 164-65.) The District Court also permitted Mussare's attorney to read the original indictment into the record as part of Shay's testimony.

The District Court sustained objections to only a few questions; two dealt with the maximum penalties Shay would face if convicted under the initial indictment, and a third dealt with what his lawyer told him regarding his plea bargain. Shay was permitted to testify that he knew the government would not dismiss the federal charges against him if he did not testify against Bruce and Mussare, and that, in that case, he would be going to trial on the same charges Bruce and Mussare were facing. Although the District Court did not permit testimony regarding the maximum penalty under the guidelines, it indicated that there may be alternative ways of seeking the same information.

Chandler does not require that Shay have been permitted to testify regarding the magnitude of the sentence reduction he hoped to receive. Instead, it requires an examination of whether the magnitude of reduction would likely have changed the jury's mind regarding Shay's motive for testifying. The evidence showed that Shay expected to have all federal charges against him dismissed, face only state charges, and receive no jail time. The evidence also showed that, absent his cooperation, Shay would be facing the exact same charges as Mussare and Bruce. Because of the extensive testimony permitted regarding the plea bargain, the actual number of years in jail that Shay would otherwise have faced was not likely to have altered the jury's impression of his motive for testifying.

In Chandler, we left unresolved the question of "whether the Confrontation Clause entitles a defendant categorically to inquire into the 'concrete terms of a cooperating witness's agreement with the government, including the sentence that

12

witness may have avoided through his cooperation.'" Id. at 221. In order to find a violation in this case, we would have to go beyond even that question and hold that, even after all of the details of the plea bargain, as the witness understands them, have been disclosed, the defendant would still have a categorical right to inquire into the penalty a cooperating witness would otherwise have received. We have found no cases holding that such a categorical right exists, and we decline to so hold. We find that the District Court did not abuse its discretion with regard to the limitations placed on the cross-examination of Shay.

Mussare next argues that the District Court erred in excluding two documents relating to the outstanding state criminal charges of the victim, Taylor. He argues that these documents should have been admitted by the District Court, because they tend to show Taylor's bias toward the government in testifying. In making this argument, Mussare relies heavily on Davis v. Alaska, 415 U.S. 308 (1974). Mussare's reliance on Davis is misplaced.

In Davis, the trial court prevented any mention of a government witness's juvenile record, which indicated that the witness was serving probation. Id. The defendant offered this evidence in an attempt to impeach the witness's credibility, by showing that the witness had a motive to lie for the prosecution. Id. at 309. The Supreme Court held that it was an error for the trial court to prevent any reference to the witness's record, because the defendant had a right to show a potential bias, including any pressure the government might be able to exert based on the witness's status as a probationer, as well as the witness's fear that he would become a suspect in the matter. Id. at 316-17.

Davis is inapplicable here. Taylor was not simply a government witness, he was the victim in this case, so there was little danger that he would fear becoming a suspect, and thus alter his testimony. In addition, the District Court did not exclude all testimony regarding Taylor's past. Taylor was permitted to testify about his drug abuse and his past convictions for shoplifting. He was also permitted to testify about certain

13

crimes for which he had not been convicted, such as car theft. Mussare was not permitted to question Taylor about certain charging documents, but those documents were extrinsic evidence, and not admissible under the Federal Rules of Evidence. See Fed. R. Evid. 608(b). Although the District Court did not permit extensive questioning regarding the pending state charges against Taylor, any effect additional testimony would have had on his perceived honesty would have been minimal. In addition, there was no evidence of a plea bargain in the pending case that was contingent upon Taylor's testifying in this case; Mussare's counsel merely speculated that might be the case. The District Court did not abuse its discretion in excluding the evidence.

D.

Appellant challenges his sentence under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). In light of the determination of the judges of this court that the sentencing issues appellant raises are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with Booker.

E.

For the foregoing reasons, the judgment of the District Court entered on August 16, 2002 will be AFFIRMED as to the conviction. The sentence will be vacated and the matter will be remanded to the district court for resentencing in accordance with Booker.

14