NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4257

UNITED STATES OF AMERICA

v.

TIMOTEO UPIA-FRIAS,

Appellant

Appeal from the District Court of the Virgin Islands,
Division of St. Thomas and St. John
(Crim. No. 3-07-cr-00065-1)
District Judge: Hon. Curtis V. Gomez

Submitted pursuant to Third Circuit LAR 34.1(a)
December 1, 2009

Before: McKEE, *Chief Judge*, FUENTES, *Circuit Judge*,
and NYGAARD, *Senior Circuit Judge*.

(Opinion filed:     April 11, 2011)

OPINION

McKEE, *Chief Judge*.

Timoteo Upia-Frias appeals the district court's judgment of conviction and

sentence.  For the reasons that follow, we will affirm.

**I.**

Since we are writing primarily for the parties who are familiar with this case, we

need only recite the factual and procedural background necessary for the disposition of

the appeal.

Upia-Frias argues that the district court erred: 1) by denying his request that a juror be discharged for improper conduct during the trial; 2) by refusing to allow cross examination about an informant witness's unrelated sentence reduction in a prior prosecution; 3) by admitting audio and video recordings without a proper foundation; 4) by denying Upia-Frias' request that English transcripts be provided during publishing of Spanish audio tapes to the jury; 5) by allotting five minutes for the exercise of ten peremptory strikes during the *voir dire*, and 6) by failing to find that the government compelled Upia-Frias to wear prison clothes on the first day of his trial, and by denying his claim that this violated his Sixth Amendment rights. Finally, Upia-Frias maintains that the government engaged in prosecutorial misconduct by improperly vouching for the informant's credibility.

**A. Juror Misconduct**

We review a district court's response to allegations of juror misconduct for abuse of discretion. *United States v. Boone*, 458 F.3d 321, 326 (3d Cir. 2006).

Sometime in the afternoon of the second day of trial, a note was passed to the district court stating: "[a]t lunch time a juror announced, 'I don't care. As far as I am concerned, all of them are guilty.'" App. 496. The district court, after consulting with counsel, decided that a questionnaire should be distributed to the jurors to determine the extent of any misconduct, and the amount of any prejudice. The court then, in the presence of counsel, individually questioned the four jurors who had responded affirmatively to a question asking if they had overhead a juror making such a statement.

2

The court also individually questioned the juror who made the statement. After thorough inquiry, the court concluded that each juror could remain fair and impartial and decided that no juror would be dismissed. We find that the district court meaningfully inquired into the incident and determined that whatever had occurred would not prevent Upia-Frias from receiving a fair trial by an unbiased jury. There was no abuse of discretion in doing so. *See United States v. Kemp*, 500 F.3d 257, 305 (3d Cir. 2007).

## B. Limiting Cross Examination

We also review a court's limitation on the scope of cross-examination for abuse of discretion. *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).

On the second day of trial, the government elicited testimony from its confidential informant that he was convicted in 1998 in an unrelated drug conspiracy involving the distribution of several thousand kilograms of cocaine and heroin, and that he served fifty-seven months after pleading guilty. Upia-Frias objected to this line of questioning and requested wide latitude on cross-examination to explore the reduction of the witness's sentence and any pro-government bias that may have resulted. The court disallowed cross examination on this issue, and instructed the jury that the informant's criminal history was not related to any of the defendants on trial and was presented by way of background only. App. 378.

Upia-Frias argues that the informant's testimony that he received a mere fifty-seven months in prison for his offense would lead the jury to assume that Upia-Frias would be facing far less time in prison because his indictment involved significantly less

3

contraband. He therefore claims that his rights under the Sixth Amendment Confrontation Clause have been infringed.

To determine if a defendant's confrontation rights have been infringed, we ask "(1) whether the limitation significantly limited the defendant's right to inquire into a witness' motivation for testifying; and (2) whether the constraints imposed fell within reasonable limits that the district court has the authority to impose." *Mussare,* 405 F.3d. at 169.

Upia-Frias wanted to cross-examine the informant about a sentence reduction he received for an unrelated 1998 conviction. Upia-Frias had nothing to do with that prosecution, and the informant was not charged with anything in this case. Because the unrelated sentence reduction is irrelevant to the witness' motivation to testify in this case, Upia-Fria's argument fails and we need not consider prong two of the *Mussare* test. The district court gave an appropriate cautionary instruction that correctly informed the jury that it could not consider the witness's prior sentence for anything other than background, and nothing on this record suggests that the evidence was considered for another purpose. Accordingly, we reject any attempt to now claim that this testimony entitles Upia-Frias to relief. Moreover, it would have been impossible to open up the "can of worms" that defense counsel sought to explore by developing details of the witness's sentence. Undoubtedly the prosecutor would have wanted redirect to establish that the sentence did not constitute the kind of "windfall" that would have favorably disposed the witness

toward the prosecution and that would have meant delving into the details of the witness's conduct in a completely irrelevant and unrelated crime.[1]

## C. Admitting Recordings into Evidence

We review a district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009).

Upia-Frias argues that the trial court erred in admitting recordings that had not been properly authenticated. Specifically, he asserts that the government failed to satisfy two of the seven "*Starks* factors." These factors are that the recordings were authentic and correct; and changes, additions, or deletions had not been made. *Unites States v. Starks*, 515 F.2d 112, 121 n.11 (3d Cir. 1975).

At trial, the government presented evidence that the informant listened to the recordings, identified the speakers, identified the date of the conversations, and asserted that the recordings accurately represented conversations between the informant and Upia-Frias. The government also established a sufficient chain of custody to support a finding that the recording that was introduced had not been tampered with. Accordingly, the district court did not abuse its discretion an admitting the recordings into evidence.

## D. Translation Transcripts

---

[1] It is difficult to determine with precision how defense counsel would have used the information he wanted to develop through an extended cross-examination. In his brief, he argues:

> Mr. Upia-Frias recognizes that the sentence occurred in a different case then the case at bar, however when someone sings for this much supper, one can reasonably assume that there must be more than just one concert. Additionally, the confidential informant was still on supervised release from this sentence, and thus there was a direct connection between the sentence and the case at bar.

Appellant's Br. at 21

The standard of review of the decision to allow the use of a transcript as a listening aid is for abuse of discretion. *United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994).

Audio tapes played during the trial were in Spanish and were translated for the jury by the government's informant who was present during the conversation. Separate transcripts with English translations were offered by both the government and Upia-Frias. There was a dispute over the accuracy of the transcripts provided by each side. The court resolved the dispute by deciding against the use of either transcript by either party. While an English transcript may have been helpful for the jury if one could have been agreed upon, the jury heard the witness's translation. The court's resolution of the disputed transcripts was fair to both sides and was not an abuse of discretion. It was far better than allowing the jury to only have a disputed transcript, or the obvious confusion that would have resulted from allowing the jury to use two conflicting transcripts of the same conversation.

### E. Time Allotted for Peremptory Strikes

In *United States v. Ruuska*, 883 F.2d 262, 268 (3d Cir. 1989), we held that impairing one's right to exercise preemptory challenges is *per se* reversible error. Nevertheless, peremptory strikes are not constitutionally required and trial courts retain broad discretion over the manner in which those strikes are exercised. *See Stilson v. United States*, 250 U.S. 583, 586 (1919). Here, the court imposed a fairly tight time restriction on everyone's exercise of peremptory strikes. However, that restriction was clearly within the court's discretion. Moreover, to the extent that the restriction affected

6

the exercise of peremptory strikes, the impact was the same on both the defense and prosecution. We do not believe the court abused its discretion in setting the challenged parameters for the exercise of those strikes.

## F. Compulsion to Wear Prison Clothes

A defendant who is compelled to appear in front of a jury in prison clothes may not be able to thereafter obtain a fair trial by a jury free of the taint of associating the defendant with being a prisoner. *See Estelle v. Williams*, 425 U.S. 501, 512 (1975).

Upia-Frias argues his right to a fair trial was violated when he was compelled to appear before a jury in prison clothing during jury selection and his first day of trial. On a Sunday afternoon, one day before jury selection and trial, Upia-Frias wrote an email to the government requesting the return of his civilian clothing for trial. The government responded at 1:30 pm the following day, stating that Upia-Frias already had his civilian clothes. Upia-Frias denies that. The court heard the parties' arguments at the close of the first day of trial, and decided that if Mr. Upia-Frias was in possession of his civilian clothes and elected to wear prison garb to trial, the government could not be faulted. On the other hand, if Upia-Frias was not in possession of his civilian clothes, the court required the government to make civilian clothing available to the defendant. *See* App. 310-15. Upia-Frias appeared in civilian attire the next morning and throughout the rest of the trial.

On the record before us, we cannot determine if Upia-Frias was compelled to participate in jury selection or the first day of trial in prison clothes, or whether he simply decided to do so even though he could have worn civilian clothes. However, it is clear

that this issue was not raised until after the jury had been selected and the first day of testimony concluded. "[A] defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." *Gaito v Brierly*¸485 F.2d 86, n3 (3rd Cir. 1973) (internal quotation marks and citation omitted). Thus, even if we assume that this defendant had no other clothes to wear during jury selection or the first day of the trial, and even if we further assume that the prison clothes he appeared in were readily identifiable as prison clothing, it is too late to attempt to raise that to the level of a due process claim.

### G. Prosecutorial Misconduct

Finally, Upia-Frias argues that the prosecutor improperly vouched for the government's confidential informant during closing argument.[2] Since defense counsel did not object during trial, we review for plain error. *United States v. Walker*, 155 F.3d 180, 187-88 (3d Cir. 1998). In order to establish improper vouching, "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." *Id.* at 187.

Upia-Frias's argument is based on two statements. However, he did not object to the first statement which was: "What [the confidential informant] testified to … is that his experience has given him some advantages. [He] has testified … that because of his

---

[2] Upia-Frias also argues that both the compulsion to stand trial in his prison garb and the elicitation of testimony from the confidential informant concerning his criminal history and sentence amount to prosecutorial misconduct. We have addressed each of these contentions earlier in the opinion and found them to be without merit. We need not discuss them again here.

experience he is comfortable going into communities where he believes that he can find others that are involved in the same conduct for which he was convicted and has served time." App. 950. That statement does not constitute vouching. The prosecutor was merely referring to the informant's statements and suggesting that his testimony explained why drug dealers would trust him.

The second statement was: "He's a drug dealer. He's had thousands of kilograms of this and that. Absolutely. And ladies and gentlemen, that's why we submit he was able to infiltrate, because he's as good as it gets. He knows the business, and he knows the people who run in this business." App. 1027-28. This statement does not rise to the level of vouching either. It is another attempt to argue that the evidence shows that the witness knew about illegal drug sales and would be trusted by drug dealers. In fact, rather than vouching for the witness, stressing his involvement in the drug culture could just as conceivably undermined the witness's credibility. Moreover, the court's final instruction cautioned the jury that matters of credibility were exclusively for the jury to decide and that lawyers statements were not binding on the jury. This instruction effectively mitigated any prejudicial effect the prosecution's statements could have had on the jury's determinations of credibility.

### III.

For the foregoing reasons the district court's judgment will be affirmed.