NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3175
_____

UNITED STATES OF AMERICA

v.

RONALD ALLEN,
                                        Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 1-09-cr-00892-001)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
April 10, 2012
_____

Before:  HARDIMAN, GREENAWAY, JR., and GREENBERG, *Circuit Judges*.

(Opinion Filed: July 11, 2012)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge.*

Ronald Allen ("Allen") appeals the District Court's July 27, 2011 Judgment and

Conviction, sentencing him to a term of seventy months of imprisonment.  Allen was

convicted of conspiracy to commit mail and wire fraud. For the following reasons, we will affirm the District Court's Order.

## I. BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts. Allen served as the owner and president of Universal Pacific Insurance Company ("UPIC"), which was formed on the Fijian island of Rotuma. UPIC had no employees, no claims processing department, and no licenses to do business in the United States. The Company also had limited funds and could not pay most claims.

The fraudulent scheme involved selling insurance to unsuspecting businesses with the inducement that policy costs were 25-30% below market rate.[1] Allen's co-conspirator, Gilbert Morgan ("Morgan")[2], would sell and issue the policies, which bore Allen's signature. Morgan kept a percentage of the premiums and would wire the remainder of the money to RRG Business Development Corporation ("RRG"), one of Allen's other companies. Over the course of the scheme, Morgan forwarded approximately $366,918.93 to Allen's RRG account.

Allen and Morgan devised other ways to sell the fraudulent insurance, and in June 2004, Allen authorized Morgan to "bind" commercial liability insurance policies from

---

[1] Morgan's clients were largely bars, nightclubs, and strip clubs, who needed liability insurance to protect against alcohol related injuries and altercations. (Appellee's Br. at 4.)

[2] Morgan was a Texas insurance broker, who had previously engaged in fraudulent insurance sales. He specialized in providing insurance policies to night clubs and strip clubs.

Prime Insurance Syndicate ("Prime"), a legitimate insurer that Allen claimed to be in the process of purchasing.[3] Allen never purchased Prime and Prime never authorized any broker affiliated with Allen to bind its policies. As a result, Prime issued a cease and desist letter to Morgan regarding the illegal binding activities. Allen directed Morgan to ignore the cease and desist letter and continue to bind insurance policies. Although Morgan initially heeded Allen's directive, he later switched the insureds from Prime to UPIC.

Allen and Morgan also used other brokers to market UPIC policies to their clients. Those brokers would receive a share of the premiums and then forward the remainder to Morgan, who took his share and wired the balance to Allen's RRG account.

Allen and Morgan worked together through December 2004, when the last UPIC policy was sold.[4] At that point, Allen and Morgan ceased working together because of mutual distrust.

In December 2007, Allen was interviewed by FBI Special Agent Samuel Mayrose. During the interview, Allen conceded that he was President of UPIC and acknowledged that UPIC was not licensed to do business in the United States. Allen stated that he did

---

[3] Certain brokers are granted the ability to "bind" an insurance company. The resulting "binder" is evidence that insurance coverage is going to be issued, and binds the company to issuing a policy.

[4] Allen's role in the conspiracy was reportedly short-lived, although a large number of businesses purchased UPIC policies and paid tens of thousands of dollars in premiums. When business insureds attempted to contact UPIC at its Belize, Mexico or California addresses, their claims were ignored. Those businesses were forced to hire their own attorneys, forced to pay out-of-pocket claims, or, forced to close their offices.

not know much about UPIC's operations and that Morgan sold UPIC policies for nightclubs. Allen did admit that he received money from Morgan as insurance commissions and claimed that he did not personally follow up on policyholder inquiries, but instead referred them to Morgan.

A federal grand jury returned a one-count Indictment against Allen on December 3, 2009, charging him with conspiracy to commit mail and wire fraud, contrary to 18 U.S.C. § 1341 and § 1343, and in violation of 18 U.S.C. § 1349. Allen filed an omnibus pre-trial motion, requesting that the Indictment be dismissed because he was not involved in the conspiracy during the five-year statute of limitations period. The Government opposed the motion and stated that it would prove at trial that additional UPIC policies were sold by Allen within the limitations period.

The District Court denied Allen's motion seeking to dismiss the Indictment.

Jury trial commenced on December 3, 2010. Allen's theory of defense throughout the trial was that he only agreed with Morgan to sell fake insurance to businesses that were aware of the illegitimacy of the policies that they were purchasing. The jury rejected this theory and returned a guilty verdict against Allen. He was sentenced to 70 months of imprisonment, the bottom of the sentencing Guidelines range, and ordered to pay restitution in the amount of $692,736.28. Allen then filed this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

An appellate court reviews de novo a district court's interpretation and application of the statute of limitations. United States v. Harriston, III, 329 F.3d 779 (11th Cir. 2003). In most cases, we review a district court's refusal to give a requested jury instruction under an abuse of discretion standard. United States v. Gross, 961 F.2d 1097, 1101 (3d Cir. 1992), cert. denied, 506 U.S. 965 (1992). However, a district court's refusal to give a jury instruction on a defendant's theory of his defense is reviewed de novo where the defendant objects to the district court's refusal. United States v. Stewart, 185 F.3d 112, 124 (3d Cir. 1999).

If a defendant does not object to the jury instruction at trial, we review the District Court's instructions to the jury for plain error. United States v. Antico, 275 F.3d 245, 265 (3d Cir. 2001); see also United States v. Lee, 612 F.3d 170, 191 (3d Cir. 2010) (unraised challenges to the jury instructions are reviewed for plain error). "We review a district court's determination that the trial evidence justified the instruction for abuse of discretion, and view the evidence and the inferences drawn therefrom in the light most favorable to the [G]overnment." United States v. Stadtmauer, 620 F.3d 238, 252 (3d Cir. 2010) (internal citations omitted).

Review of a verdict for sufficiency of the evidence is plenary. United States v. Mussare, 405 F.3d 161, 166 (3d Cir. 2005). We reverse a jury verdict for insufficiency of the evidence "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." Id.

5

### III.   ANALYSIS

Allen raises six arguments related to his conviction, - - 1) that the charges against him were barred by the Statute of Limitations ("SOL"); 2) that there was insufficient evidence of his membership in the conspiracy during the SOL period, which requires a reversal of his guilty verdict; 3) that the District Court committed plain error by not instructing the jury *sua sponte* regarding unanimity as to an underlying factual issue; 4) that the District Court committed structural error when it gave a jury instruction regarding multiple conspiracies and containing his theory of defense; 5) that the District Court abused its discretion by instructing the jury on willful blindness, and that the evidence did not support the instruction; and 6) that he is entitled to a new trial based on ineffective assistance of counsel.  These issues will be addressed *seriatim* below.

#### *Statute of Limitations*

Allen contends that the charges against him were barred by the SOL and the District Court erred by not dismissing the indictment on this basis.  The December 3, 2009 indictment alleges that Allen's conspiracy began in March 2004 and ended "in or about December 2004".  (Supp. App., Vol. I, 100.)  The SOL for conspiracy to commit mail or wire fraud is five years, pursuant to 18 U.S.C. § 1349.  Allen argues that this case is untimely because "the conspiracy was concluded and perfected . . . on November 24, 2004, when the last policy was bought and sold by UPIC, [] the moneys [] disbursed by coconspirators was not in furtherance of the conspiracy, but the conspiracy in fact was completed in total upon the last sale of the UPIC policy, which was prior to December

3rd, about ten days earlier." (Id. at 98.) Although Allen received a wire transfer from Morgan on December 7, 2004, he contends that "the conspiracy was not about disbursement of moneys between the coconspirators but was about selling those policies to the victims of these policies and that the last act in this Indictment is named as November 24, 2004." (Id. at 100.)

The Government argues that the conspiracy was about collecting money, and claims that Allen's participation in the conspiracy extended beyond December 3, 2004. In addition, the Government stated that it would prove at trial that additional UPIC policies were sold within the limitations period. In addition, Morgan testified at trial that five businesses had insurance coverage that became effective after December 3, 2004.

We have held that:

1) resignation from the enterprise does not, in and of itself, constitute withdrawal from a conspiracy as a matter of law; (2) total severing of ties with the enterprise may constitute withdrawal from the conspiracy; however (3) even if the defendant completely severs his or her ties with the enterprise, the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations.

United States v. Antar, 53 F.3d 568, 583 (3d Cir. 1995).

Here, there was sufficient evidence of activity that falls within the SOL and activity in furtherance of the conspiracy after December 3, 2004 that Allen's argument must fail. The District Court committed no error on this point.

On December 3, 2010, the District Court denied Allen's omnibus motion and the jury trial began.

7

*Evidence of Allen's Participation in the Conspiracy during the SOL Period*

The Government satisfies the requirements of the statute of limitations for a non-overt act conspiracy if it alleges and proves that the conspiracy continued into the limitations period. Harriston, 329 F.3d at 783. The Government only has to show, either directly or circumstantially, that a conspiracy existed; that the defendant knew of the conspiracy; and that with knowledge, the defendant became a part of the conspiracy. Id. A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated. Id. A defendant can overcome this presumption of continued participation only by showing that he affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy has occurred. Id.

During trial, Allen requested that the District Court instruct the jury regarding the duration of the conspiracy and his theory that he had withdrawn from the conspiracy before the SOL had run. In its instructions, the District Court discussed both the conspiracy and Allen's theory of withdrawal from the conspiracy, as Allen had requested. Allen did not object to the jury instruction before the jury retired for deliberations, but later claimed that the District Court should have *sua sponte* given the jury an instruction that "the dividing up of the money gained in a conspiracy, after the conspiracy is over, does not extend the ending date of the conspiracy." (Appellant Br. at 11.) While Allen concedes that the District Court properly instructed the jury on the statute of limitations

8

for the conspiracy, he now argues that the District Court committed error by not *sua sponte* giving the above jury instruction.

When a defendant does not raise objections to the jury instructions before the jury begins deliberations, he bears the burden of proving plain error. See Lee, 612 F.3d at 191. In order to prove plain error, a defendant must show: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Marcus, 130 S. Ct. 2159, 2164 (2010). (Internal citations and quotations omitted.) However, Fed. R. Crim. Pro. 52(B) authorizes no remedy unless the error affects substantial rights. If the error is found to be plain and to affect substantial rights, the court of appeals "has authority to order correction, but is not required to do so." United States v. Olano, 507 U.S. 725, 735 (1993).

Allen has not satisfied the requisites of plain error. The facts necessary to argue that the District Court erred when it issued jury instructions related to the conspiracy are not present here. The District Court instructed the jury that the Government bore the burden of proving that Allen committed the crime charged within the five-year SOL period, and that in order to find Allen guilty, the jury would have to also find that the conspiracy extended beyond December 3, 2004. The District Court also pointed out that in order for the jury to find that Allen withdrew from the conspiracy, they must find that

he "must have taken some clear, definite, and affirmative action to terminate his participation, to abandon the illegal objective, and to disassociate himself from the agreement." (Supp. App., Vol. II, 758-59.)

Although Allen claims that he withdrew from the conspiracy before December 3, 2004, five years before the government obtained the Indictment charged in the conspiracy, we find that Allen did not affirmatively withdraw from the conspiracy prior to the SOL. There was testimony from one of the FBI Special Agents that RRG received wire transfers for funds from March 23, 2004 to December 7, 2004. "[I]n order to establish a prima facie case, he [the defendant] must demonstrate either that he gave notice to his co-conspirators that he disavows the purpose of the conspiracy or that he did acts inconsistent with the object of the conspiracy." Antar, 53 F.3d at 583.

Allen did not demonstrate that he had given notice to Morgan or any other co-conspirators that he would no longer be involved in the conspiracy. By accepting money from the proceeds of the conspiracy, Allen acted consistently with the intent of the conspiracy. The Indictment charges Allen with, among other crimes, "*collecting premiums as payment for such false and fraudulent policies, and using such premium payments for their own personal use.*" (Emphasis added.) The proofs at trial support this statement in the indictment. We find that Allen was still a participant in the conspiracy during the SOL period.

*Unanimity Jury Instruction*

Allen argues that the District Court committed plain error by not *sua sponte* instructing the jury regarding unanimity as to an underlying factual issue. Allen wanted the District Court to direct the jury that it needed to unanimously agree as to whether he and Morgan agreed to use UPIC or Prime to defraud insureds. Allen argues that both the Indictment and the Government's proof presented at trial describe two separate conspiracies, UPIC and Prime, and contends that the jury needed to unanimously agree on which conspiracy had been proven. We disagree.

The Indictment describes only one conspiracy between Allen and Morgan. The conspiracy is described as "a scheme and artifice to defraud Insureds, and to obtain money and property, by means of false and fraudulent pretenses, representations and promises," and lists the methodologies of the crime, including the agreement to sell and the sale of "false and fraudulent UPIC and Prime policies." (Supp. App., Vol. 1, 2-4.) In addition, the District Court instructed the jury as to the necessity for a unanimous verdict, stating that "you must all find" that the government proved that Allen engaged in a conspiracy with Morgan. (Supp. App., Vol. 1, 196.) This instruction complies with the law of this Circuit.

While it is true that a defendant in a federal criminal trial has a constitutional right to a unanimous verdict, United States v. Yeaman, 194 F.3d 442, 453 (3d Cir. 1999), it does not mean that a defendant has a right to insist on an instruction requiring unanimous agreement on the means by which each element is satisfied. See id. The District Court

11

did not err.  There is no requirement that the Court, *sua sponte*, render a jury instruction regarding unanimity as to the means by which he engaged in the conspiracy.

> *Structural Error*

Allen next argues that the District Court committed structural error when it gave a jury instruction regarding multiple conspiracies and containing his theory of defense, "mistakenly reliev[ing] the jury of the duty of finding an essential element of the offense."  Appellant's Br. 12-17.

The Supreme Court of the United States has concluded "that various forms of instructional error are not structural but instead trial errors subject to harmless-error review."  Hedgpeth v. Pulido, 555 U.S. 57, 60-61 (2008) (internal citations omitted).  Further, "Neder [v. United States, 527 U.S. 1 (1999)], makes [it] clear that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically 'vitiat[e] all the jury's findings.'"  (Internal quotations and citations omitted).  "An instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted."  Hedgpeth, 555 U.S. at 61.

Allen requested the jury instruction on multiple conspiracies.  We have held that we will not entertain a defendant's challenge to jury instructions that were requested by the defendant.  See United States v. Ozcelik, 527 F.3d 88, 97 n.6 (3d Cir. 2008).  Under the 'invited error doctrine,' because Allen requested the jury instruction, he waived his right to raise this issue on appeal.  Id. ("Because Ozcelik made a joint request in favor of

12

the very instructions he now challenges, he waived his right to raise these instructional issues on appeal under the invited error doctrine.")  There is no error here.

*Willful Blindness Jury Instruction*

Allen argues that the District Court abused its discretion by instructing the jury on willful blindness, because the evidence did not support the instruction.

> A willful blindness instruction is often described as sounding in deliberate ignorance.  Such instructions must be tailored . . . to avoid the implication that a defendant may be convicted simply because he or she should have known of facts of which he or she was unaware.  Willful blindness is not to be equated with negligence or a lack of due care, for willful blindness is a subjective state of mind that is deemed to satisfy a scienter requirement of knowledge.  The instruction must make clear that the defendant himself was subjectively aware of the high probability of the fact in question, and not merely that a reasonable man would have been aware of the probability.

United States v. Wert-Ruiz, 228 F.3d 250, 255 (3d Cir. 2000) (internal citations and quotations omitted).

Allen insists that there was no evidence presented at trial indicating that he denied knowing that the object of the conspiracy was to sell UPIC and Prime insurance to business owners to defraud them.  However, at Allen's trial, the District Court placed an oral opinion on the record, addressing the willful blindness charge.  The District Court stated that Allen "has taken the position that while there may be proof that he and Morgan conspired to issue false insurance certificates requested by the insureds and, thus, defrauding landlords or regulatory bodies that required these businesses to be covered by insurance, that he did not become aware that Morgan, Petrillo, and others were

13

defrauding the insureds.  This defense, thus, denies knowledge of the object of the charged conspiracy."  Supp. App. Vol. II, 715-16.  We agree.

We also agree with the District Court's conclusion that "there is ample evidence that defendant Allen took deliberate steps to not confirm the facts of defrauding the insureds that were otherwise obvious to him."  Id. at 716.  Therefore, we find that the District Court did not abuse its discretion in instructing the jury on willful blindness.

*Ineffective Assistance of Counsel*

Finally, Allen argues that he is entitled to a new trial based on ineffective assistance of counsel.  "Under Strickland v. Washington, 466 U.S. 668 (1984), to establish ineffective assistance of counsel a criminal defendant must show that counsel's conduct was deficient (i.e. 'outside the wide range of professionally competent assistance')", id. at 690, and that the deficiency resulted in prejudice to the defense (i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  Id. at 694.

This Court has repeatedly held that "the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed."  United States v. Olfano, 503 F.3d 240, 246 (3d Cir. 2007); United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir. 1989).  "There is, however, a narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal.  Where the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed."  United States v.

14

Headley, 923 F.2d 1079, 1083 (3d Cir. 1991); see also Government of Virgin Islands v. Zepp, 748 F.2d 125, 133 (3d Cir. 1984) (defendant's counsel was ineffective because of a conflict of interest); Theodoropoulos, 866 F.2d at 598 (no direct review "unless the record sufficiently establishes a basis for our review"). A sufficient record would include Allen's disagreement with his trial counsel regarding his court strategy and factual evidence on the prejudice Allen suffered as a result of his trial counsel's actions. See e.g., Olfano, 503 F.3d at 246-47 ("without a record . . . the court could not determine whether counsel failed to effectively represent his client. Nor is it clear that Olfano was prejudiced by counsel's performance.)

Here, Allen's counsel represented him throughout trial and sentencing. The record is not sufficient to allow us to determine whether there was ineffective assistance of counsel. Therefore, we conclude that Allen's argument regarding ineffective assistance of counsel should be addressed by the District Court if and when Allen seeks collateral review.

## IV.  CONCLUSION

For the above reasons, we affirm the July 27, 2011 Judgment and Conviction of the District Court.

15