NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2703
_____

UNITED STATES OF AMERICA

v.

MICHAEL LAURY,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-17-cr-00313-001)
District Judge: Hon. Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2022

Before: HARDIMAN, RESTREPO, and PORTER, *Circuit Judges*.

(Filed: November 21, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Michael Laury appeals his judgment of conviction for various drug offenses following a jury trial. We will affirm.

I

Laury and his girlfriend, Amy Casey, lived at 75 Park Avenue, Wilkes-Barre, Pennsylvania (the Home). A United States Magistrate Judge issued a warrant to search the Home based largely on information from a cooperating witness who had purchased methamphetamine there. Upon executing the warrant at the Home, law enforcement officials uncovered a methamphetamine laboratory in the basement.

Laury was indicted on three counts: managing a drug premises and aiding and abetting the same in violation of 21 U.S.C. § 856(a)(2); conspiring to manufacture, distribute, and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846; and making a false statement to law enforcement officials in violation of 18 U.S.C. § 1001(a)(2). Laury unsuccessfully moved to suppress evidence recovered from the Home. He also filed a pretrial motion in limine to exclude evidence of his past drug smuggling activities while he was incarcerated, which the District Court denied.

During Laury's six-day trial, the jury heard testimony from other individuals—Mark Heath, Sean Melleski, Danielle Huffman, and Casey—who participated in the illicit activities at the Home. Heath and Melleski testified they provided methamphetamine to Laury and Casey in exchange for lodging there. The witnesses also testified that Laury was present in the basement when methamphetamine was manufactured; that Laury used the methamphetamine manufactured there; and that he helped run the laboratory by

2

obtaining supplies, concealing its activities, and burning the waste. An FBI agent testified that he observed Laury entering the basement where the methamphetamine laboratory operated. Heath and Casey also testified that Laury had smuggled drugs into prison while previously incarcerated. Finally, the jury heard testimony about Laury's attempts to bribe witnesses to testify favorably on his behalf.

The jury found Laury guilty of all counts, and he timely appealed.

## II[1]

Laury raises three issues on appeal: one challenge to jury instructions and two challenges to evidence admitted at trial.

## A

Laury first challenges the District Court's jury instruction on the "purpose" element of maintaining a drug-involved premises under 21 U.S.C. § 856(a)(2). Section 856(a)(2) makes it a crime to "manage or control any place" and "knowingly and intentionally" make it available "for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." Citing decisions from the Ninth and Tenth Circuits, Laury argues that "purpose" means the primary purpose for which the place is used. But we held in *United States v. Safehouse*, 985 F.3d 225, 237 (3d Cir. 2021), that "purpose" in the context of § 856(a)(2) means only a "significant purpose" of drug activity. The District Court instructed the jury that the Government needed to prove that the drug activity at the Home was a "significant or important or one of the primary

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

3

reasons" why Laury or others used the Home. App. 839–40. So the District Court's jury instruction adhered to our standard.

## B

Laury next contends the District Court erred by denying his motion to suppress evidence obtained from the Home. Laury advances two arguments—first, that the search warrant was not supported by probable cause; and second, that the search warrant was not sufficiently particularized.

## 1

Laury argues the Magistrate Judge who issued the search warrant erroneously based his probable cause determination on uncorroborated and unreliable information from a cooperating witness. We exercise deferential review of a magistrate's probable cause determination and uphold it if the magistrate had a "substantial basis" to determine, under the totality of the circumstances, that there is a "fair probability" that "evidence of a crime will be found in a particular place." *United States v. Ritter*, 416 F.3d 256, 262–63 (3d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Magistrate Judge had a substantial basis here for finding probable cause. The search warrant application provided a detailed description of the cooperating witness's personal experience purchasing methamphetamine at the Home. *See Gates*, 462 U.S. at 234 (an informant's "explicit and detailed description of alleged wrongdoing [and] statement that the event was observed first-hand, entitles his tip to greater weight"). The witness described the interior of the Home, apparently under construction with interior walls torn down; noted the rear doors and windows of the Home were open to allow

methamphetamine vapors to vent; reported seeing equipment indicative of methamphetamine production; and even highlighted details unrelated to the illicit activities, such as a table made from an old glass door. And he later positively identified the Home to law enforcement.

The search warrant application also recounted law enforcement's efforts to corroborate the witness's description through interviews with other cooperators, record checks, and surveillance. The application could have included more detail—for example, what the surveillance uncovered—but we owe a "great deal of deference" to a neutral magistrate's probable cause determination. *Ritter*, 416 F.3d at 264. Here, the absence of more specific corroborating evidence does not undermine probable cause given the "particularized information about the crimes that were being committed," observed by the witness firsthand. *United States v. Nelson*, 284 F.3d 472, 484 (3d Cir. 2002).

2

Laury also contends the search warrant was insufficiently particular because it permitted a search of the entire Home, which Laury claims is a multi-unit building. It is true that for multi-unit residences warrants must be limited to the particular residence at issue. *Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987). But here, the officers reasonably believed that the Home was a single-family residence, and they disclosed the information they had to the Magistrate Judge. *See id.* at 85 (validity of a warrant "must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate"). Photographs of the Home attached to the application depict a building with three stories, a three-car garage, one front door,

5

and one street number, and the cooperating witness described the Home as "under construction with most interior walls torn down" and "a wide-open floor plan." App. 64. Laury rightly notes that certain of these features are common to apartment buildings. But the warrant described the Home "as it was known . . . to the officers after reasonable inquiry under the circumstances," and thus does not fail for lack of particularity. *Ritter*, 416 F.3d at 266 (upholding warrant as sufficiently particular despite officer's failure to investigate if the residence had more than one unit where tipster identified the residence as concealing drugs and officer attached a photograph of the residence to the warrant application).

C

Finally, Laury argues the District Court erred when it admitted evidence of his prior drug smuggling activities under Rule 404(b) of the Federal Rules of Evidence. Evidence of prior bad acts is admissible only if its probative value—here, to prove Laury's intent, knowledge, and absence of mistake—is not substantially outweighed by its potential unfair prejudice. *See* Fed R. Evid. 403; *Huddleston v. United States*, 485 U.S. 681, 691 (1988).

Despite the Government's argument for plain-error review, we review this issue for abuse of discretion. *See United States v. Heatherly*, 985 F.3d 254, 265 (3d Cir. 2021). Laury challenged the admissibility of the Rule 404(b) evidence—including arguing that it was more prejudicial than probative under Rule 403—through a written pretrial motion in limine. Laury was not, as the Government contends, required to object to the District Court's Rule 403 balancing during its definitive oral denial of his motion in limine.

Instead, the denial of a motion in limine in circumstances like Laury's "relieves a defendant of his need to make contemporaneous objections in order to preserve an issue on appeal." *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005); *see also Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324–25 (3d Cir. 1985) (holding issue raised in limine preserved where counsel filed a written pretrial motion and the court made a definitive oral ruling with no suggestion that it would reconsider the matter at trial).

Laury argues that the District Court did not conduct any Rule 403 balancing and that the evidence's prejudicial impact substantially outweighed its probative value. Laury's first argument has some merit since the District Court did not explicitly reference either prong of Rule 403 and its reasoning was conclusory. Yet the Court recognized the relevance of the evidence to Laury's knowledge, intent, and lack of mistake—establishing its probative value. And it gave the jury a limiting instruction—thereby acknowledging the potential for, and diminishing any risk of, unfair prejudice. *See United States v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022). The Court therefore "said just enough to confirm that it did the Rule 403 balancing." *Heatherly*, 985 F.3d at 265.

Nor did the District Court abuse its discretion in admitting the challenged evidence. As the Court noted, evidence of Laury's prior drug smuggling activities was probative of his knowledge and lack of mistake regarding the methamphetamine laboratory in his basement. And though the evidence hurt Laury's case because it highlighted his proclivity to use and deal drugs, it was not *unfairly* prejudicial considering the limiting instruction, the uncharged nature of the conduct, and his own

7

counsel's characterization of Laury as a "drug user" during counsel's opening statement. App. 206–207; *see United States v. Repak*, 852 F.3d 230, 247–48 (3d Cir. 2017) (holding that admission of uncharged conduct with a limiting instruction was not unfairly prejudicial).

\*     \*     \*

For the reasons stated, we will affirm the District Court's judgment of conviction.