

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-18-2009

# USA v. Green

Precedential or Non-Precedential: Precedential

Docket No. 06-2468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Green" (2009). *2009 Decisions.* Paper 1805.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1805

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2468

UNITED STATES OF AMERICA,

v.

ARTEGA GREEN,

Appellant

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 04-cr-00105)
District Judge: Hon. Gregory M. Sleet

Argued June 5, 2008

Opinion filed September 2, 2008

Petition for Panel Rehearing Granted and Opinion Vacated
December 30, 2008

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 27, 2009

BEFORE: AMBRO, CHAGARES and COWEN,
Circuit Judges

(Filed: February 18, 2009)

Stephen P. Patrizio, Esq. (Argued)
1500 John F. Kennedy Boulevard, Suite 1205

Two Penn Center Plaza,
Philadelphia, PA 19102
Counsel for Appellant

Robert F. Kravetz, Esq. (Argued)
Office of the United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge.

Defendant Artega Green was convicted by a jury of one count of distribution of more than 50 grams of cocaine base in violation of 21 U.S.C. § 841. The District Court sentenced him to a term of imprisonment of 151 months. Green timely appeals from both his conviction and sentence. For the reasons set forth below, we will vacate the judgment of conviction and remand for a new trial.

## I. FACTUAL BACKGROUND AND PROCEDURAL       HISTORY

Green's current conviction is premised upon a single controlled narcotics transaction which occurred on May 14, 2002. However, Green had apparently been a target of Drug Enforcement Agency ("DEA") investigative efforts since 2000, and was the subject of a number of other attempted controlled buys from 2000 to 2002. But the May 2002 transaction was the only one for which he was charged. DEA Special Agent David Hughes and Task Force Officer Lawrence Collins were the case agents; both were supervised by DEA Special Agent Eric Miller. The DEA's confidential informant ("CI"), Michael Brown, participated in the buy.

With regard to the May 2002 transaction, the Government's evidence against Green, as presented during its case-in-chief, consisted of: the testimonies of Special Agents (1) Hughes, and (2) Miller, (3) an audio recording in which the CI called a cell phone number "associated with" Green and ordered 3 ounces of cocaine base, and (4) a video[1] in which the

---

[1] The video was first introduced, not by the Government, but by defense counsel during his cross-examination of Special Agent Hughes. The parties subsequently agreed to introduce the

CI allegedly engaged in a drug transaction with Green. The video was of relatively low quality, and only briefly depicted the profile of the alleged perpetrator; thus, key to the defense's case was to cast doubt as to whether Green was in fact the person depicted. Similarly, the audio recording consisted merely of a two-second phone call in which the recipient of the call (Green, allegedly) said "What's up dog, what's the deal?" and agreed to the buy. The only evidence introduced by the Government in its case-in-chief directly connecting Green to both the audio and video was the testimony of the agents. Hughes testified he recognized Green's voice on the audio recording, Miller stated he recognized Green on the video and that he observed Green arrive at the location of the controlled buy and enter the premises with the CI (where the video surveillance took place). However, the CI involved in the transaction, Brown, testified for the defense at trial that the individual on the video was not Green.

## II. DISCUSSION

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction to review the judgment and resulting sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On appeal, Green raises a number of issues: whether (1) the District Court erred by admitting Brown's prior written statement under the "present sense impression" hearsay exception; (2) the Government violated its Brady v. Maryland disclosure obligations; (3) the prosecutor engaged in misconduct in her summation by referring to Green's reactions after viewing of the video of the controlled buy; whether the District Court erred (4) in allowing the jury to review transcripts of audio tape identifying Green by name; (5) in attributing additional drug quantities to Green at sentencing; and (6) in determining that the drug involved was crack cocaine. Because we conclude that the error as to the admission of the CI's statement warrants a new trial, we do not reach the remaining issues.[2]

---

video recording as a joint exhibit.

[2] With respect to Green's prosecutorial misconduct argument, Special Agent Hughes testified at a suppression hearing that, when he arrested Green, he purposefully did not identify himself as a DEA agent. Instead, he merely said that he was "police" and that Green was being arrested for a state *capias*. Only after Green was transported to DEA offices did Hughes inform him of the true nature of the arrest – that he had been indicted by a federal grand jury for distribution of narcotics. Before giving any Miranda warning, Hughes showed Green the video supposedly depicting him selling drugs. Hughes testified at trial that Green widened his eyes, asked for the video to be replayed, and, after watching it for a second time, sighed and lowered his

A. Admission of Michael Brown's Statement

The crux of the Government's case was proving the identity of the individual captured on its audio and video evidence. It sought to do this exclusively through the testimonies of Agents Hughes and Miller. In a rather dramatic turn of events, however, Michael Brown, the CI involved in the controlled transaction, testified as the sole defense witness.

_____

head. Hughes then advised Green of his Miranda rights, and Green eventually gave an incriminating statement. In her closing statement, the prosecutor expressly relied on Green's physical reactions to the video as demonstrating an admission of guilt.

Although the Government arguably violated Green's rights under the Fifth Amendment and the Miranda doctrine, the Court need not reach such constitutional issues at the present time. The erroneous admission of the CI's statement into evidence clearly mandates a new trial, rendering any further inquiry unnecessary. For the same reason, we need not address the Government's contention that Federal Rule of Criminal Procedure 12(e) and this Court's recent ruling in United States v. Rose, 538 F.3d 175 (3d Cir. 2008), prevent us from conducting a plain error review of these Miranda-related issues.

Furthermore, Green devotes much of his attention to the Brady v. Maryland issue on appeal. The thrust of Green's complaint is that the Government's failure to disclose the extent of the DEA's prior encounters with him prejudiced his ability to effectively cross-examine Special Agents Hughes and Miller on the basis of their identifications of his voice and likeness. He claims the prejudice inuring from this omission is evident given the transactions that allegedly formed the basis of the agents' familiarity with him were ones for which the District Court rejected (upon a preponderance standard) as insufficiently attributable to Green to warrant recognition as relevant conduct at sentencing. We understand the argument. But because this issue was not formally raised and litigated below, we are thus unable to make the requisite materiality determination based on the record before us. See United States v. Bagley, 473 U.S. 667, 682-84 (1985) (relevant standard is reasonable probability of different outcome at trial had impeachment evidence been disclosed).

According to Brown, Green never got out of the car on the day of the buy, and the person depicted on the video selling the drugs was an individual known as "Tex." Brown also stated that the DEA agents had used him before in other controlled buys, always with the goal of catching Green on tape selling drugs; but they were never successful, and were upset at Brown because of this. He was extensively cross-examined by the Assistant United States Attorney ("AUSA"), who was allowed to elicit from Brown, without defense objection, that he had previously purchased drugs from Green on several occasions.

After Brown was excused from the witness stand, the prosecution called Special Agent Miller as a rebuttal witness. Through Miller, and over Green's vigorous objection, the Government was permitted to introduce as substantive evidence a statement that Brown purportedly made some 50 minutes following the controlled buy in question, after he was brought back to DEA offices and debriefed by the case agents. In it, Brown attested that it was Green who sold him the drugs. The statement was signed by Brown, and was witnessed and signed by the agents as well. Although the defense argued that the statement should not have been admitted under Federal Rule of Evidence 613(b) because Brown had not been given the opportunity to explain or deny it on the stand, the District Court admitted the statement, pursuant to the prosecution's argument, as a present-sense impression under Rule 803(1). No limiting instruction was given.

We generally review a trial court's decision to admit or exclude evidence for abuse of discretion. United States v. Sokolow, 91 F.3d 396, 402 (3d Cir. 1996). But where the evidentiary determination is premised upon an interpretation of the federal rules, our review is plenary. Id. Here, we conclude the District Court's evidentiary ruling was in error.

Federal Rule of Evidence 803(1) renders admissible as a present-sense impression "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." A hearsay statement may be admitted under this exception if it explains or describes an event personally witnessed by the declarant, and if the declaration is made essentially contemporaneous to witnessing the event. United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998); 5 Jack B. Weinstein and Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 803.03[1] (2d ed. 1997). In this case, there is no dispute that Brown was personally present at the narcotics transaction and that his statement purports to recount the details of that transaction. The only question before us is whether the statement is sufficiently contemporaneous to qualify as a present-sense impression.

The fundamental premise behind this hearsay exception "is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication." United States v. Manfre, 368 F.3d 832, 840 (8th Cir. 2004) (quoting United States v. Blakey, 607 F.2d 779, 785 (7th Cir. 1979)); 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.03[1]; see Miller v. Keating, 754 F.2d 507, 512 (3d Cir. 1985) (lack of time to deliberately manipulate truth of account is key). "The idea of immediacy lies at the heart of the exception," thus, the time requirement underlying the

exception "is strict because it is *the* factor that assures trustworthiness." 4 Christopher B. Mueller and Laird C. Kirkpatrick, FEDERAL EVIDENCE § 8:67, 559, 562 (3d ed. 2007); see also Chambers v. Mississippi, 410 U.S. 284, 298-99 (1973) (hearsay exceptions are premised on the idea that the particular circumstances surrounding the making of certain utterances guarantee their reliability). Put differently, the temporality requirement must be rigorous because the passage of time – or the lack thereof – is the effective proxy for the reliability of the substance of the declaration; hence the greater the passage of time, the less truthworthy the statement is presumed to be, and the more the scales should tip toward inadmissibility. Manfre, 368 F.3d at 840 ("The opportunity for strategic modification undercuts the reliability that spontaneity insures."). Nevertheless, some brief temporal lapse is permissible so as to accommodate "the human realities that the condition or event may happen so fast that the words do not quite keep pace." 4 FEDERAL EVIDENCE § 8:67, at 562; Fed. R. Evid. 803(1) Adv. Comm. Notes (1975) ("[w]ith respect to the time element, [803(1)] recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable").

While it is true, as the Government notes, that courts have not adopted any bright-line rule as to when a lapse of time becomes too lengthy to preclude Rule 803(1)'s application, see Blakey, 607 F.2d at 785 (no *per se* rule exists), we are nevertheless unaware of any legal authority for the proposition that 50 minutes after the fact[3] may appropriately be considered "immediately thereafter." On the contrary, given the clear language of the rule and its underlying rationale, courts consistently require substantial contemporaneity. See, e.g., United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007) (911 phone call made "only one or two minutes ... immediately following" event admissible); United States v. Danford, 435 F.3d 682, 687 (7th Cir. 2006) (statement made "less than 60 seconds" after witnessing robbery qualified as present-sense impression); United States v. Jackson, 124 F.3d 607, 618 (4th Cir. 1997) (statement by witness to police upon their arrival at scene that defendant was threatening to kill her family was admissible as "description of ongoing events"); Blakey, 607 F.2d at 779, 785-86 (not error to admit statement made at most 23 minutes after event[4]);

---

[3] Here, the prearranged controlled transaction concluded at approximately 2:55 p.m., and the statement was made at 3:45 p.m. App. at 507A.

[4] The precise timing of the statement at issue in United States v. Blakey (in which an extortion victim described an instance of defendants' threats) was unclear. 607 F.2d 779, 785 (7th Cir. 1979). The chronology there was as follows: the defendants left the victim's store at 6:00 p.m. after threatening him, and a phone call was made at 6:23 p.m. In the interim, the victim was recorded having a lengthy conversation with another individual, during which he made the statement sought to be admitted. Id.

cf. Manfre, 368 F.3d at 840 (statement made after "an intervening walk or drive" following event not admissible; "The present-sense-impression exception ... is rightfully limited to statements made while a declarant perceives an event or immediately thereafter, and we decline to expand it to cover a declarant's relatively recent memories."); Hilyer v. Howat Concrete Co., Inc., 578 F.2d 422, 426 n.7 (D.C. Cir. 1977) (excluding statement made between 15 and 45 minutes following event).  Indeed, we have previously expressed skepticism that a statement made some 40 minutes after the fact could be properly admitted as a present-sense impression.  Mitchell, 145 F.3d at 577 (where robbery occurred between 9:00am and 9:15am and notes were found in getaway car a mile from the crime scene at approximately 10:00am, intervening lapse was "probably too long for applicability of the present-sense impression[,] ... which requires the statement to be made virtually contemporaneously with the event being perceived"); see also Miller, 754 F.2d at 512 (concluding it was "not necessarily an abuse of discretion" to admit statement made "several minutes" after the fact as excited utterance, but noting "courts have recognized that the length of time separating the event from the statement [for admission as an excited utterance] *may be considerably longer* than for statements qualifying under the present sense impression exception of Rule 803(1)") (emphasis added).

Here, we need not decide the precise temporal limits of application of the present-sense impression exception, nor whether a statement made 50 minutes after the fact could ever be properly admitted under Rule 803(1).  This is so since Brown's statement in this case is problematic not only because of the lengthy passage of time, but also because the statement was only made *after he had been questioned by DEA agents* about the details of the transaction the statement purports to describe.  This undisputed sequence of events affirmatively indicates that Brown made his statement after he was expressly asked to reflect upon the events in question, and thereby fatally disqualifies the declaration for admission as a present-sense impression.  See, e.g., 4 FEDERAL EVIDENCE § 8:67, at 564 (statements made after "significant delays – those measured in minutes or hours, *especially if the speaker has made other statements in the interim* – bar resort to [Rule] 803(1)") (emphasis added); United States v. Narciso, 446 F. Supp. 252, 287-88 (E.D. Mich. 1977) (note written two hours after event and in response to questions not present-sense impression because declarant "not only had time to reflect on what had transpired [but] was intentionally encouraged to reflect on those events before answering").  Admitting Brown's statement under these circumstances would directly undermine the fundamental premise behind the present-sense impression exception – that contemporaneity ensures reliability because there is no time for deliberate

at 785-86.  There, the court found that "a relatively large amount of conversation" was recorded *after* the statement at issue.  Id. at 786.  Thus, the Seventh Circuit concluded that although the only outer temporal demarcation available was 23 minutes, the statement at issue was nevertheless likely made well within the 23-minute span.  Id.

fabrication. E.g., 4 FEDERAL EVIDENCE § 8:67, at 564 ("time for reflection [] lessen[s] or removes[s] the assurance of trustworthiness"); 5 WEINSTEIN'S FEDERAL EVIDENCE § 803.03[1] (substantial contemporaneity required as to allow "little or no time for calculated misstatement"). In short, the weight of the authorities makes plain that Brown's statement – made 50 minutes after perceiving the transaction, after he was searched and driven to DEA offices, and after he was debriefed by law enforcement – was not properly admitted as a present-sense impression.

Nor does Special Agent Miller's testimony corroborating the substance of Brown's description of the transaction otherwise render the statement admissible under Rule 803(1). We have indicated that courts may, in certain cases, require substantiation or other indicia of trustworthiness *in addition* to contemporaneity before admitting the declaration as a present-sense impression. See In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 303 (3d Cir. 1983), rev'd on other grounds, 475 U.S. 574 (1986) (declining to admit statements "solely on the basis of contemporaneity" because there was otherwise "reason to be skeptical" of their substance). However, we are aware of no authority that a statement which does not independently satisfy a hearsay exception's prerequisites may nevertheless be admitted based solely upon corroboration of its contents. Such a proposition would obviously render much of the actual text of the hearsay rules completely superfluous.[5]

---

[5] Furthermore, although not necessary to our decision, we observe that the admission of Brown's statement may also have been improper under Federal Rule of Evidence 613(b), as was argued by Green below. Fed. R. Evid. 613(b) ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."). Under the circumstances, the prosecution was entitled to question Brown about his prior written statement during cross-examination, see Fed. R. Evid. 613(a) (may inquire about prior statement for impeachment purposes), but the rule is explicit that in order to "prove up" the content of the inconsistent statement, Brown must be confronted with it. E.g., 4 Jack B. Weinstein and Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 613.05[1] (2d ed. 1997) (extrinsic evidence of prior statement should be excluded if Rule 613(b) requirements are not satisfied); United States v. Liefer, 778 F.2d 1236, 1250 (7th Cir. 1985) (trial court correctly sustained objection to admission of prior statement when government did not confront witness with it). However, here the Government did not ask Brown about his statement while he

Our conclusion that the admission of Brown's prior statement was error warrants reversal unless the error was harmless. Lippay v. Christos, 996 F.2d 1490, 1500 (3d Cir. 1993). To determine harmlessness, we must decide whether it was highly probable that the evidentiary error substantially influenced the jury's verdict. Gov't of Virgin Islands v. Toto, 529 F.2d 278, 283 (3d Cir. 1976). Here, notwithstanding the Government's conclusory assertions to the contrary, the evidence against Green, outside of Brown's statement, was not overwhelming. While Special Agent Miller testified he recognized Green as the individual briefly (and partially) depicted on the videotape, the informant himself – the only person who was actually physically present for the transaction – testified to the contrary. Given this conflicting testimony, the import of Brown's prior statement in which he contradicts his trial testimony is self-evident, and the resulting prejudice to Green is plain. Even after taking into account Green's reactions to watching the videotape and his subsequent inculpatory statement under interrogation, see supra n.2, we cannot help but harbor a "grave doubt" that the erroneous admission of the written statement here substantially influenced the jury's verdict. Toto, 529 F.2d at 283 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)); see Lippay, 996 F.2d at 1500 (new trial warranted where evidence pertaining to key issue in case was improperly admitted). Accordingly, we must vacate the conviction and remand for a new trial.

## III. CONCLUSION

The District Court erred in admitting the written statement of the confidential informant as a present-sense impression. Because this error was not harmless, we will vacate Green's conviction and remand the matter for a new trial.

---

was on the stand, did not recall him after the statement was introduced through the rebuttal witness (nor was any attempt to do so evident on the record) for its substantive content, and the District Court made no determination that the statement's admission was otherwise warranted in "the interests of justice." Fed. R. Evid. 613(b); 4 WEINSTEIN'S FEDERAL EVIDENCE § 613.02[2][a] (need for full opportunity to explain prior statement is particularly strong where inconsistent statement may be admitted as *substantive* evidence); see also id. § 613.05[4][a] ("interest of justice" exception may be invoked if, *inter alia*, witness was not present to be recalled to be questioned about prior statement).