BERZON, Circuit Judge,
concurring:
I concur in the majority opinion with one exception: I cannot agree with the assertion on pages 5080-81 that the report by the detectives who “eradicated” the marijuana plants as to the number of plants they counted qualifies as a present sense impression under Rule 803(1) of the Federal Rules of Evidence. As I explain in Parts I and II of this concurrence, applying the present sense exception to the facts of this case profoundly distorts the exception and applies it far beyond the realm supported by its underlying rationale.
Indeed, neither the parties nor the district court ever suggested that this exception applied here — the majority has inserted it into this case on its own initiative. The government argued that the admission of the officers’ count of the marijuana plants should be affirmed based on Federal Rule of Evidence 807, the residual exception to the hearsay rules. I agree. The officers’ count easily falls within the scope of Rule 807, and applying that Rule implicates none of the problems created by applying the present sense impression exception.
In addition, as I explain in Part III, although I agree with the opinion’s conclusion that United States v. Nazemian, 948 F.2d 522 (9th Cir.1991), is not so “clearly irreconcilable,” Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc), with Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as to permit a three-judge panel to overrule Nazemian, I believe the continued vitality of Nazemian after Crawford is an issue that merits en banc review in an appropriate case.
I.
The opinion relies on the present sense impression exception, Fed.R.Evid. 803(1), to support the admissibility of Fresno County Sheriffs Department deputies’ statements regarding the number of mari *1146 juana plants in the defendant’s field. As they destroyed the marijuana row-by-row, the deputies tallied the number of plants they had picked and gave those numbers to Detective Jensen, who recorded their statements. According to the opinion, the deputies’ calculations were descriptions of the destruction of the marijuana field and therefore admissible as present sense impressions. That application, however, extends Rule 803(1) well beyond its limits.
The government did not argue before the district court nor before us that the present sense impression applies. The district court did not rule on the basis of this exception. We therefore have had no briefing on the issue. That it occurred to no one previously associated with this case that the present sense impression exception might apply is reason enough to make its application suspect. Moreover, while imaginative, the majority’s analysis bends that exception out of shape in a manner that, in other cases, could seriously undermine the hearsay rules.
I begin by noting that what while the majority’s view of what constitutes a present sense impression leads, on the facts of this case, to a relatively narrow admission of evidence, its application to other cases could lead to a much broader exception. Here, because the deputies’ counts of the marijuana plants were testimonial, they were required under the Confrontation Clause to testify, thereby allowing the jury to assess the officers’ credibility. See Crawford, 541 U.S. at 68-69, 124 S.Ct. 1354. However, if the calculations were nontestimonial — for example, if the officers were reporting their counts in order to coordinate counting efforts rather than to record evidence, see United States v. Solorio, 669 F.3d 943 (9th Cir.2012) — there would be no requirement that they testify, so evidence of their calculations could be admitted without any opportunity for the jury to assess their credibility. Under Rule 807, in contrast, only evidence that “is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts” is admissible. Fed.R.Evid. 807(a)(3). Therefore, if the residual exception were to apply, the officers would ordinarily still be required to testify, whether or not they were so required under the Confrontation Clause, for such testimony would be the most probative evidence of their actions. That is, hearsay evidence would be admissible under Rule 807 only to the extent that it was not available via direct testimony. Thus, Rule 807 permits a much narrower exception to the hearsay rules than does the majority’s expansion of Rule 803.
This analysis highlights the problem with the notion that Jensen was recording a present sense impression: In fact, he was not recording the officers’ sense impressions when they were collecting the marijuana plants. Instead, what Jensen testified to was the result of a mental process — counting a series of marijuana plants while they were collected, and, ultimately, determining how many there were in total. Because of the large number of marijuana plants, the detectives could not determine the total number of plants just by looking at them, but had to interpose over some period of time — some minutes at least — a mental method for determining the number of plants. This sort of cumulation of sense impressions over a period of time, mediated through a thought process that could easily contain errors, is neither “present” nor a “sense impression,” and is therefore not encompassed by Rule 803(1).
Rule 803(1) provides a narrow exception to the hearsay rule for statements “describing or explaining an event or condition, made while or immediately after the declarant perceived it.” The exception is grounded in the premise that “substantial *1147 contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation,” but “[spontaneity is the key factor.” Fed.R.Evid. 803(1) advisory committee’s note. To qualify as a present sense impression, a statement must occur simultaneously with the event, although “a slight lapse is allowable” if “precise contemporaneity is not possible.” Id.
The reason present sense impressions are considered inherently reliable is because statements contemporaneously describing an event are unlikely to reflect memory loss or provide an opportunity to lie. See Douglas D. McFarland, Present Sense Impressions Cannot Live in the Past, 28 Fla. St. U. L. Rev. 907, 914 (2001). The fundamental pivot of the exception is the “nature of the thought process producing the statement rather than the substantive content of the statement.” Edward J. Imwinkelreid, The Need to Resurrect the Present Sense Impression Hearsay Exception: A Relapse in Hearsay Policy, 52 How. L.J. 319, 345 (2009). Closeness in time between the statement and the event is therefore critical in eliminating the unreliability that is introduced when declarants have the opportunity to reflect on and interpret the event. See id. Contemporaneous expression limits declarants’ ability to lie or misremember; “[w]hen the thought process is complex, involving an intermediate step between the receipt of the present sense impression and the utterance,” the statement no longer qualifies. Id.
It is true, of course, that mental processes interpret what the eyes see or the ears hear, so that not all opportunity for error through those processes is eliminated through contemporaneity. Some people are colorblind and others can only hear limited tone ranges, so they will misreport what they contemporaneously perceive. But the present sense exception seeks to minimize the opportunities for mistake or prevarication that occur when mental processes beyond those necessary to connect a sense impression to a verbal description. The exception’s “language, rationale, and history do strongly suggest that ... there should be no delay beyond an acceptable hiatus between perception and the cerebellum’s construction of an uncalculated verbal description.” Jon R. Waltz, The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes, 66 Iowa L. Rev. 869, 880 (1981) (emphasis added).
Here, the deputies’ statements as to the number of plants they had collected were calculations derived from their observations, but were not reports of the observations themselves. Such purposeful analysis of sense impressions after the fact is not covered by the present sense impression exception. Because they did not simply report each plant as they saw it but rather, at the end of their collecting and counting process, reported to Jensen the results of their calculation, the officers both had time to reflect and therefore not to tell the truth, and, more importantly, the opportunity to make mistakes in the calculation.
Our Circuit’s caselaw, as well as that of other circuits, supports a narrow interpretation of the present sense impression exception consistent with this analysis:
• “[T]o qualify under either [FRE 803(1) or 803(2) ], an out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection.” Bemis v. Edwards, 45 F.3d 1369, 1373 (9th Cir.1995).
• “The theory behind [the present sense impression, excited utterance, and state of mind] exceptions is that the greater the circumstances for misrepresentation, the less reliable is the *1148 declaration.... [T]he fact that [the defendant] went through several drafts indicates that he had ample time to reflect upon his statements. Thus, any evidence provided by the letter was unreliable.” United States v. Faust, 850 F.2d 575, 586 (9th Cir.1988) (internal citations and quotations omitted).
• “In making the foundational inquiry on admissibility under [FRE 803(1) (present sense impression), 803(2) (excited utterances), or 803(3) (state of mind)], the court must evaluate three factors: contemporaneousness, chance for reflection, and relevance.” United States v. Ponticelli, 622 F.2d 985, 991 (9th Cir.1980), overruled on other grounds by United States v. De Bright, 730 F.2d 1255 (9th Cir.1984).
• “The declarant makes a statement describing the event at or very near the time of the observation ... We admit the statement because the circumstances under which it was given— immediately after an observation- — diminish substantially the opportunity for fabrication.” United States v. McElroy, 587 F.3d 73, 86 (1st Cir.2009).
• “[T]he temporality requirement must be rigorous because the passage of time — or the lack thereof — is the effective proxy for the reliability of the substance of the declaration.” United States v. Green, 556 F.3d 151, 155-56 (3d Cir.2009). There, the declarant’s statement was problematic not only because of a 50 minute lapse in time, but also because he was responding to requests by the DEA to explain the event. Id.
• “A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions.” United States v. Woods, 301 F.3d 556, 562 (7th Cir.2002).
Again, although the extension of the present sense impression exception to the circumstances of this case may seem relatively harmless, I do think that is because the detectives did testify to their actual sense impressions, and only could not testify as to the number they reported. We have to consider this case, however, as if they did not testify, because if the present sense impression exception does apply, they might not have had to testify at all. I do not see how that scenario could possibly comport with the basic underpinnings of the hearsay rule, or with the limited scope of Rule 803(1).
II.
I am not suggesting that we should reverse. Instead, I would rely on what the government does argue — that the catchall hearsay exception applies. The opinion indicates that Rule 807 is substantively appropriate, but that the lack of pretrial notice is fatal. I don’t see why that is so.
First, Hieng has not objected that he received insufficient notice. As far as I can determine, the current record does not indicate whether there was sufficient notice. For all we know, there may have been.
More substantively, even if there was not proper pretrial notice, there was, in fact, a good deal of notice during the trial — before the testimony was introduced— as to how the government wanted to proceed. As the opinion explains, the government tried to introduce Jensen’s calculations several times, but the district court sustained hearsay objections. Eventually, however, the methodology was fully explained, and the district court admitted the evidence. There is no indication whatsoever that notice of an intent to invoke Rule *1149 807 would have made any difference, and the evidence was in no way sprung on the defense. “[Fjailure to give pretrial notice will be excused if the adverse party had an opportunity to attack the trustworthiness of the evidence.” United States v. Bachsian, 4 F.3d 796, 799 (9th Cir.1993).
Moreover, examined from the perspective of Rule 807, and given that the detectives did testify (and that, as the opinion explains, once the totals reported to Jensen are in evidence, other hearsay exceptions cover the tally sheet and report), the only “hole” that has to be covered by Rule 807 is quite narrow. The district court was careful to ensure that the officers’ information was trustworthy, that other evidence toward the same end was not available, and that admission of the evidence served the purposes of the evidence rules. See Fed.R.Evid. 807(a). The court insisted that each officer testify first as to his methodology in extracting, counting, and reporting the number of marijuana plants. Proceeding in this way ensured that the jury had the chance to assess the credibility of each of the officers who collected the plants. Further, Rule 807 is context-specific, and so, unlike the majority’s expansion of the present sense impression exception, does not threaten in future cases to leave the hearsay rule in the dust.
In sum, my concern is that we not bend seriously out of shape a hearsay exception grounded in precepts not here applicable. Although the role of the present sense impression exception here is narrow, if applicable, it could allow a trial to proceed without the testimony of the detectives who actually saw and collected the marijuana plants, opening up a huge hole in the hearsay rule. I would hold instead that, on this record, the catchall hearsay exception applies and that either the notice requirement was waived because not raised by Hieng or any lack of notice was harmless.
III.
In my view, the holding in Nazemian rests, at bottom, on a pre-Crawford understanding of the unity between hearsay concepts and Confrontation Clause analysis. Moreover, its ultimate conclusion — that a translator’s out-of-court version of a testimonial statement need not be subject to cross-examination at trial — seems in great tension with the holdings of Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), and Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), that laboratory reports may not be admitted without testimony by the individuals who conducted the laboratory tests. Translation from one language to another is much less of a science than conducting laboratory tests, and so much more subject to error and dispute. Without the ability to confront the person who conducted the translation, a party cannot test the accuracy of the translation in the manner in which the Confrontation Clause contemplates. I therefore believe that this issue should be considered en banc at some juncture.
Here, however, the issue was not raised at trial, so our review is for plain error, and the translator was in fact in the court room and could have been called, introducing an additional consideration — whether it matters that the government did not call a translator who was readily available to the defense. Quite possibly it does, but plain error review under these circumstances would contort and complicate our consideration of a novel constitutional issue. I would therefore await a case in which the question was properly raised at trial and would then hear that case en banc.