**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-4255

PROMOTION IN MOTION, INC.; PIM BRANDS, LLC,
Appellants

v.

BEECH-NUT NUTRITION CORP., a HERO GROUP CORPORATION

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 02-09-cv-01228)
District Judge: Honorable William J. Martini

Argued: September 24, 2013

Before:  AMBRO, FISHER, and HARDIMAN, Circuit Judges

(Opinion filed:  October 10, 2013)

William D. Wallach, Esquire (Argued)
McCarter & English
110 Mulberry Street
Newark, NJ  07102

*Counsel for Appellants*

Paul J. Dillon, Esquire  (Argued)
Bloom & Dillon, P.C.
70 South Orange Avenue, Suite 240
Livingston, NJ  07039

Richard A. Cirillo, Esquire
Karen R. Kowalski, Esquire
David A. Joffe, Esquire
King & Spalding LLP
1185 Avenue of the Americas
New York, NY   10036

*Counsel for Appellee*

OPINION

AMBRO, Circuit Judge

Promotion in Motion, Inc. is a marketer and distributor of brand-name confections, fruit snacks, and specialty foods.  PIM Brands, LLC (together with Promotion in Motion, "PIM") operates a facility manufacturing food products for its own brand names and for other private labels.  Beech-Nut Nutrition Company ("Beech-Nut") makes and sells baby food products.

In late 2007, Beech-Nut solicited PIM to produce a new, all-natural gummy snack, called "Fruit Nibbles," for sale under the Beech-Nut brand.  Beech-Nut directed the development process, requesting particular colors, textures and flavors, though not necessarily providing guidance as to the product's specific formulation.  PIM began mass producing Fruit Nibbles in August 2008, and Beech-Nut contracted for approximately 230,000 cases of the product via four signed purchase orders.  These purchase orders, which are the only written agreements between the two parties,[1] provide in part that

---

[1] Although a draft "co-pack" agreement was negotiated, it was never consummated.

2

[t]he terms and conditions set forth in [these orders] constitute the entire agreement between the parties . . . and supersede . . . all previous verbal or written representations, agreements and conditions . . . [unless modified in writing and signed by all parties] . . . . [PIM] warrants that the goods . . . furnished under the [purchase orders] will comply with the specifications, are fit for the purpose intended, merchantable and free from defects of material and workmanship[,] and . . . [upon] discovery of any defect, all rejections will be returned at [PIM's] risk and expense.

*See, e.g.*, JA 293.

Beech-Nut received its first delivery of Fruit Nibbles in September 2008. After entering the market, the product experienced quality issues, and Beech-Nut received numerous complaints from consumers and retail outlets indicating that the Fruit Nibbles were "powdery," "dried out," "shriveled," "crusty," "rotten," "stale," "moldy," "wilted," had a "fermented" and "horrible" smell, "looked like dead toes," and were generally "disgusting." In December 2008, Beech-Nut instituted a nationwide recall of the product and accepted returns. PIM declined to accept those returns from Beech-Nut or to compensate it for the rejected product and costs of withdrawal from the market. PIM brought suit against Beech-Nut in New Jersey state court for breach of contract, breach of the implied covenant of good faith, and estoppel. Beech-Nut removed the case to federal court, and counterclaimed for breach of warranty and negligence under New York law.

Beech-Nut moved for summary judgment on all of PIM's claims and its own counterclaims. In a December 20, 2011 letter opinion, the District Court granted in part and denied in part Beech-Nut's motion, concluding that, "although at least some of the shipped Fruit Nibbles breached PIM's express warranties," substantial impairment (such that Beech-Nut was entitled to revoke acceptance of all Fruit Nibbles) was a factual issue

3

to be decided by a jury.  The District Court dismissed PIM's claims against Beech-Nut in their entirety.

Prior to trial, the parties stipulated that, "[p]ursuant to [the] Purchase Orders, PIM expressly warranted that all shipped Fruit Nibbles would . . . be fit for their intended purpose, merchantable, and free from defects of material and workmanship," and the Fruit Nibbles that were the subject of customer and retailer complaints "did not satisfy the warranties in the purchase orders."  JA 937-38. After a three-day trial in September 2012, the jury concluded that PIM's breach of its warranties substantially impaired the value of all the Fruit Nibbles purchased by Beech-Nut, and awarded Beech-Nut $2,222,000 in damages.  PIM has appealed, seeking to reverse the District Court's summary judgment order, vacate the final judgment, and remand for a new trial.

We review a district court's grant of summary judgment *de novo* and apply the same standard as that court.[2]  *Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011). Viewing all inferences in the light most favorable to the nonmoving party, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).  "We generally review a trial court's decision to admit or exclude evidence for abuse of discretion." *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009).  "[A] party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in

---

[2] Here the District Court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

the district court." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006).

The District Court correctly dismissed PIM's claims against Beech-Nut. Among other things, PIM did not allege that Beech-Nut breached the terms of the purchase orders, which are the only enforceable contracts between the parties.

PIM argues that the District Court erred by excluding evidence tending to indicate that there were no specifications as to the Fruit Nibbles' appearance, color or texture, and that, as a result, the jury was asked to rule on whether PIM breached certain specifications without ever being told what the specifications might have been or why there were none. However, Beech-Nut does not argue that the Fruit Nibbles were non-compliant for being the wrong color, taste or texture, and the jury was not asked to make such a narrow determination; rather, it was instructed to consider the broader issue of whether they were merchantable or fit for their intended purpose. Given the language of the purchase orders that the Fruit Nibbles would be "fit for the purpose intended, merchantable and free from defects of material and workmanship," and PIM's stipulation that the product "did not satisfy the warranties in the purchase orders," the District Court correctly found that PIM had conceded warranting merchantability and a violation thereof, and that arguments as to color, taste and texture were irrelevant.

The purchase orders provide that they are "the only contracts between the parties," that "their express terms governed the parties' financial responsibilities for any defective Fruit Nibbles," and include the express warranty already noted. PIM nonetheless attempted to introduce extrinsic evidence of negotiations underlying an un-ratified co-

pack agreement as a "course of dealing" reflecting the parties' understanding that there were no warranties. The parties' exchange of drafts and failure to agree to the terms of the co-pack agreement do not constitute a "sequence of previous conduct . . . fairly to be regarded as establishing a common basis of understanding." N.Y. U.C.C. § 1-205(a). The District Court correctly found that the purchase orders were never modified, that they governed the rights and obligations of PIM and Beech-Nut with respect to the Fruit Nibbles, and that the extrinsic evidence was inadmissible.

Finally, the jury verdict should not be overturned as unsupported by the weight of the evidence. Given that PIM did not file post-trial motions for judgment as a matter of law or for a new trial before the District Court, we cannot review this claim. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006)*. Even if we could review the jury verdict, there is no indication in the record that the jury's verdict in Beech-Nut's favor was against the weight of the evidence.

For these reasons, we affirm.