NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-2668 & 15-3729
_____

UNITED STATES OF AMERICA

v.

CARLOS C. HILL,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:12-cr-00243-001)

District Judge: Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
August 25, 2016

Before:  RENDELL, SMITH, and KRAUSE, Circuit Judges

(Opinion filed: August 26, 2016)

_____

OPINION*
_____

KRAUSE, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Carlos Hill challenges his conviction as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and his sentence of 235 months' imprisonment, imposed pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). Hill raises six issues on appeal, stemming from his criminal proceedings, as well as those raised when we remanded his initial appeal for further consideration. We will address each in turn, and, for the reasons stated below, we will affirm.

## I.    Background[1]

In the morning hours of July 13, 2012, Tamela Corish and Rodney Nicholson, driving separately after leaving a family get-together, pulled into a gas station in Harrisburg, Pennsylvania, to buy cigarettes. While Nicholson was inside the store, a young man jumped out of an SUV parked at the gas station, hopped into Nicholson's car—which was unlocked with the keys in the ignition—and took off despite Corish's attempts to stop him. Corish and Nicholson got into Corish's vehicle and gave chase. While they lost sight of Nicholson's car, they followed the SUV until they eventually caught up to it and parked alongside it. A man emerged from the SUV, and Nicholson demanded the return of his car. At that moment, a second man stepped out of the SUV and, per Corish and Nicholson, pointed a handgun at Corish and Nicholson, telling them to leave. Corish and Nicholson complied and thereafter contacted the authorities.

The Harrisburg police later questioned Elijah Brown, who, according to the SUV's owner, was driving the vehicle at the time of the crime. Brown consented to a search of

---

[1] Because we write primarily for the parties, we provide background only as relevant to the issues on appeal.

his home, where the police recovered a handgun. Brown admitted to having been part of the robbery and named Appellant Carlos C. Hill and Wesley Garner as two other individuals who had been in the SUV during the heist. He further told the police that Garner gave Hill the weapon while in the SUV, and Hill used the gun to intimidate Corish and Nicholson by lifting up his shirt to expose a firearm. During the ensuing investigation, Corish identified Brown as the driver of the SUV and twice identified Hill in a photo array as the individual with the gun, while Hill maintained that Brown—not he—pointed the gun at Corish and Nicholson.

Hill was tried and convicted as the person who intimidated Corish and Nicholson with the handgun, resulting in a conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. He was sentenced to 235 months' imprisonment pursuant to the ACCA, 18 U.S.C. § 924(e), and the applicable sentencing guidelines. Hill now challenges his conviction and sentence, arguing: (1) the trial court's jury instructions were improper; (2) the Government's use of Brown's statement to the police violated *Brady v. Maryland*, 373 U.S. 83 (1963); (3) the Government engaged in prosecutorial misconduct; (4) Hill was denied his Sixth Amendment Confrontation Clause rights; (5) Hill's trial counsel had an actual conflict of interest because of his prior representation of Nicholson, who testified against Hill at trial; and (6) Hill's 235 month sentence is unconstitutional in light of the Supreme Court's decision in *Johnson v. United States*, 135

S. Ct. 2551 (2015), which struck down the residual clause of the ACCA.[2] Upon careful consideration of these myriad claims, we reject Hill's arguments and will affirm his conviction and sentence.

## II.  Discussion[3]

### A.  Jury Instructions

Hill argues that the District Court erred in instructing the jury on the theories of constructive and joint possession of a firearm. Specifically, Hill asserts that the Government prosecuted solely on the basis of *actual* possession and that the substantive evidence at trial, consisting of testimony identifying Hill as the assailant who pointed a gun at the robbery victims, only supported an instruction of actual possession. Hill did not, however, raise an objection to the District Court's initial instruction at trial. After the jurors began deliberating, they twice asked for clarification as to the elements of constructive possession, and the District Court twice offered clarifications that mirrored its initial instructions; defense counsel objected to the District Court's supplemental instruction following the first jury question but did not object to the second clarification provided by the District Court. We will review the instructions that were challenged at trial for abuse of discretion and review those that were not challenged at trial for plain error. *See United States v. Sims*, 329 F.3d 937, 942-43 (7th Cir. 2003).

_____

[2] The first four arguments were raised in Hill's initial appeal, whereas the latter two were the subject of a remand of that initial appeal by this Court on May 28, 2015. We consider all six issues in this single opinion.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Applying the relevant standards, we perceive no error in the District Court's instructions. As a threshold matter, Hill's argument that the Government did not argue constructive possession is untrue. While the Government's arguments and evidence focused on actual possession, it mentioned both actual and constructive possession in its opening statement. Hill's assertion that there was insufficient evidence at trial to support a constructive possession instruction is also unavailing. We will review each of the three instructions in turn.

Hill's argument concerning the initial instruction is precluded by *Griffin v. United States*, 502 U.S. 46 (1991), which

> restated the longstanding rule that if the evidence is insufficient to support a conviction on one alternative theory in a count but sufficient to convict on another alternative theory that was charged to the jury in the same count, then a reviewing court should assume that the jury convicted on the factually sufficient theory and should let the jury verdict stand.

*United States v. Syme*, 276 F.3d 131, 144 (3d Cir. 2002) (citing *Griffin*, 502 U.S. at 49-50). Hill does not challenge the sufficiency of the evidence under the theory of actual possession, and any such challenge would surely fail based on the record at trial. Therefore, pursuant to *Griffin*, we presume the jury convicted under an actual possession theory and conclude there was no error, much less plain error, in the District Court's instruction.

Hill's objections to the two supplemental instructions also fail. We review jury instructions by considering "the totality of the jury instructions to determine 'whether, viewed in the light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury.'" *United States v. Antico*, 275 F.3d 245, 265 (3d Cir.

5

2001) (quoting *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999)), *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358 (2010). While Hill did object to the District Court's first supplemental instruction, he provides no specific objection beyond a general complaint as to the appropriateness of the constructive possession instruction in the first place. That complaint is foreclosed by *Griffin*, and we discern no abuse of discretion in the District Court's decision to respond to the jury's questions in a way consistent with its initial instructions. For the same reasons, we find no plain error in the District Court's second supplemental instruction, to which Hill did not object at trial.

### B.       *Brady* **Challenge**

Hill next argues that the Government withheld evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree.

At trial, Hill's counsel introduced a jailhouse letter written by Brown that implied Brown was the one who brandished the handgun at Corish and Nicholson. In rebuttal, the Government introduced the statement Brown made to the police shortly after the incident, in which he identified Hill as the one with the gun. Because Brown had invoked his Fifth Amendment right and declined to testify, his testimonial hearsay statement to the police could only be admitted as a prior inconsistent statement for impeachment purposes under Federal Rule of Evidence 806. The District Court warned both the Government and the jury that Brown's statement to the police was only to be used for that purpose. Hill argues that, because the Government failed to disclose Brown's statement to defense counsel prior to trial, it violated *Brady*. Because Hill did not

6

properly raise a *Brady* objection in the District Court, we review—if at all—only for plain error. *See, e.g.*, *United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012).[4]

The Government argues that Brown's statement does not trigger *Brady* because it was inculpatory. *Brady*, however, extends to impeachment evidence that makes an eyewitness's testimony "markedly weaker," *Kyles v. Whitley*, 514 U.S. 419, 441, 453 (1995), and the Supreme Court has rejected the contention that impeachment evidence does not qualify as *Brady* material merely because it is also inculpatory, *Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999). Here, Brown's statement had impeachment value because it contradicted both Brown's jailhouse letter and certain elements of Corish's story (e.g., whether Hill pointed the gun or merely exposed it by lifting his shirt), and thus constitutes *Brady* material because it could have significantly weakened key eyewitness testimony.

But failure to disclose *Brady* evidence only necessitates a new trial if the evidence is "material," meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Here, we cannot discern how earlier disclosure of Brown's statement to the police would have altered the outcome of the trial. Brown's statements were made before trial; the evidence was ultimately disclosed at trial;

---

[4] In *United States v. Green*, 556 F.3d 151, 154 n.2 (3d Cir. 2009), we implied that where a *Brady* claim is not raised in the district court, it is largely unreviewable because the appellate record will lack the requisite findings of fact from the district court. Because we ultimately decided *Green* on other grounds, we follow the Seventh Circuit's approach and review Hill's *Brady* claim for plain error.

and Hill's trial counsel was able to cross examine the detective who took Brown's statement. *See, e.g.*, *Mota*, 685 F.3d at 649 ("[D]isclosure [of *Brady* material] even in mid-trial suffices if time remains for the defendant to make effective use of [it]." (quoting *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011))). Thus, because the introduction of the *Brady* evidence did not prejudice Hill, it was not "material," and the District Court did not plainly err in admitting it.[5]

## C. Prosecutorial Misconduct

Hill not only takes issue with the introduction of Brown's statement, but also argues that the Government blatantly ignored the District Court's warning to treat Brown's hearsay statement solely as impeachment evidence and engaged in prosecutorial misconduct by using the statement as substantive evidence of Hill's guilt during its closing argument. While we agree the Government erred, we will affirm the District Court's conclusion that the prosecutor's remarks were not so prejudicial as to warrant a new trial.

During its closing argument, the Government told the jurors that, in their efforts to determine whether Hill possessed the handgun, they "may . . . consider" Brown's statement, "in which [Brown] says that Mr. Hill had the gun at the time of the incident."

---

[5] Hill fares no better with his argument that the District Court abused its discretion by allowing Brown's statement to be used for impeachment purposes under Federal Rule of Evidence 806 on the grounds that the statement was not, in fact, inconsistent with Brown's jailhouse letter. *See United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). Brown's post-arrest statement indicated that Hill pointed the gun at the victims, whereas his subsequent jailhouse letter implied that Brown himself had done so.

App. 346. Following closing argument, Hill's counsel objected and requested a mistrial. The District Court instead gave an immediate curative instruction, clarifying that Brown's statement could only be used "in determining the credibility of the witness, Mr. Brown," and not as "substantive proof that . . . Mr. Hill had the gun." App. 347. We review the District Court's decision to deny a motion for a new trial predicated on allegations of prosecutorial misconduct for abuse of discretion and find none. *United States v. Wood*, 486 F.3d 781, 786 (3d Cir. 2007).

Here, the District Court acknowledged and the Government does not seriously dispute that the Government improperly treated Brown's statement as substantive evidence. But prosecutorial misconduct warrants a new trial only if it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process," *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)), and a trial court must consider a prosecutor's improper remarks in the context of the entire trial, including any curative instructions, the weight of the properly admitted evidence against the defendant, and the nature of the prosecutor's improper actions, *United States v. Morena*, 547 F.3d 191, 193-94 (3d Cir. 2008).

The District Court did not abuse its discretion in concluding on this record that the error did not require a mistrial. First, the Government's misconduct was not the introduction of improper evidence, but rather its characterization in a few sentences at the end of its closing argument of how the jury should interpret Brown's otherwise admissible statement. Second, the District Court immediately followed the Government's closing argument with an appropriate curative instruction and again

9

reminded the jurors after a lunch break as part of its final jury instructions that they should adhere to the "limited purpose[s]" it assigned to various pieces of evidence, including not using impeachment evidence "as proof of [the] truth about what the witness said in an earlier statement." App. 373, 383. Given the limited nature of the Government's conduct here and the careful instructions provided to the jury[6] by the District Court, we discern no abuse of discretion that would "raise doubts as to the fairness of the trial" and will affirm. *Morena*, 547 F.3d at 194 (quoting *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002)).

### D.    Confrontation Clause

Hill next argues that the use of Brown's statement to the police violated his constitutional rights under the Sixth Amendment's Confrontation Clause. Specifically, Brown urges (1) that because Brown's statement was inculpatory, this case is distinguishable from precedent that has permitted the prosecution to use testimonial statements for nonhearsay purposes; and (2) that because Brown was never available for cross examination, the Government's conversion of Brown's statement to the police from impeachment evidence to substantive evidence during closing arguments was reversible error under the Confrontation Clause. Because Hill's counsel neither specifically objected to the admission of Brown's post-arrest statement on Confrontation Clause grounds, nor mentioned the Confrontation Clause as part of his objection to the

---

[6] "We generally presume that juries follow instructions given by the District Court." *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).

10

Government's closing argument, we will review for plain error. *See United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005).

Hill's contention that inculpatory evidence is not covered by existing Confrontation Clause precedent fails. As a general matter, the Confrontation Clause does not bar the use of testimonial statements for nonhearsay purposes. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Of particular relevance here, the Supreme Court permitted inculpatory, testimonial, nonhearsay evidence for impeachment purposes in *Street*, 471 U.S. at 411-12, 417, and it has since broadly construed *Street* to permit testimonial statements "as long as [jurors] were instructed to consider [such a statement] not for its truth, but only for the 'distinctive and limited purpose'" of impeachment, *Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012) (quoting *Street*, 471 U.S. at 417); *accord Adamson v. Cathel*, 633 F.3d 248, 258-59 (3d Cir. 2011) (explaining that, under the Confrontation Clause, inculpatory evidence may be admitted for impeachment purposes if accompanied with a limiting instruction). The District Court provided such instruction here when it told the jury that Brown's statement "was used to show [the jury] that there was a prior inconsistent statement" that could be relevant to Brown's credibility and was "not substantive proof that [Brown] . . . is saying Mr. Hill had a gun." App. 347. There was thus no plain error on this front.

We agree with Hill that the Government endeavors at its peril to take refuge in the nonhearsay purpose exception when it has characterized impeachment evidence as substantive evidence during its closing argument, but we conclude in the circumstances

11

of this case that the District Court did not plainly err in this regard, either. It is indisputable that a confession by a nontestifying co-defendant that incriminates the defendant during *a joint trial* may not be admitted as substantive evidence against the nontestifying co-defendant unless the confession is redacted to eliminate any reference to the defendant and the court provides a limiting instruction that the statement can be used as evidence only against the nontestifying co-defendant. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In *Richardson*, the Court concluded that where a "prosecutor sought to undo the effect of the limiting instruction by urging the jury to use [the co-defendant's] confession in evaluating" the defendant's guilt, such behavior was sufficient to create a Confrontation Clause violation despite a limiting instruction before such statements were made and a curative instruction thereafter. *Id.* at 205, 211. Thus, in the context of a joint trial, a prosecutor's misuse of a statement admitted against the nontestifying co-defendant can warrant reversal even in light of a subsequent curative instruction. *See id.*; *Bruton v. United States*, 391 U.S. 123, 137 (1968); *Brown v. Superintendent*, No. 14-2655, --F.3d-- (3d Cir. Aug. 22, 2016) (holding that a defendant's Confrontation Clause rights were violated when a co-defendant's statement was admitted at their joint trial as substantive evidence against the co-defendant and the prosecutor linked the statement to the defendant during closing argument).

Here, in contrast, Hill and Brown were tried separately, Brown's statement was originally admitted only as impeachment evidence, and the Government asked the jury to make improper use of that statement only once in passing in its closing argument. While the Seventh Circuit has implied that *Richardson*'s lessons may extend beyond the joint

12

trial context, *Lee v. McCaughtry*, 892 F.2d 1318, 1326 (7th Cir. 1990), and we do not foreclose that possibility, binding precedent is not "sufficiently clear" on that point, *see United States v. Calabretta*, --F.3d--, 2016 WL 3997215, at *7 n.11 (3d Cir. July 26, 2016), for us to conclude that the District Court *plainly* erred in proceeding with a curative instruction.

###### E.      Conflict of Interest

After Hill's initial appeal, we remanded for the limited purposes of addressing Hill's arguments regarding his trial and appellate counsel's alleged conflict of interest and the applicability of *Johnson* to his ACCA conviction.  We conclude the District Court properly rejected both of these claims.

Hill argues that because the Office of the Federal Public Defender, which represented him at trial and on appeal, represented Nicholson (who testified against Hill at trial) in an unrelated case involving a petty charge for driving on a suspended license, the Federal Defender had a conflict of interest that ultimately denied Hill his Sixth Amendment right to effective counsel.  We disagree.  Simply showing that a conflict of interest exists is not enough to automatically warrant a new trial; rather, a defendant seeking reversal based on an attorney conflict when no contemporaneous objection was lodged must show "an actual conflict of interest" that "*affected counsel's performance*— as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).  We agree with the District Court that Hill has not met this high standard.

With respect to trial counsel, although Hill asserts that Mr. Thornton did not investigate or prepare for cross examination of Nicholson as thoroughly as he would have

without the conflict, the District Court correctly notes that Hill "provides no examples of deficiencies in Mr. Thornton's trial strategy or cross examination of Nicholson." *United States v. Hill*, No. 1:12-cr-0243, 2015 WL 6560632, at *5 (M.D. Pa. Oct. 29, 2015). Indeed, Mr. Thornton indicated in a hearing on remand that Federal Defender's prior representation of Nicholson did not "factor into his decisions relating to Hill's representation," and the trial transcript reflects that Mr. Thornton in fact vigorously cross examined Nicholson during trial. *Id.*

Similarly, while Hill's counsel on his first appeal, Mr. Ulrich, personally represented Nicholson in the unrelated petty criminal matter that ended long before Mr. Ulrich took on Hill's case, Hill points to no specific strategic choice Mr. Ulrich made that prejudiced Hill on appeal. As a result, we find no "actual conflict of interest" on the part of either Mr. Thornton or Mr. Ulrich, and we thus affirm the District Court on this matter, as well.[7]

### F.    ACCA Sentence Enhancement

Finally, Hill argues that the District Court erred in concluding that a robbery he committed in Virginia counts as one of the three violent felonies necessary to trigger an ACCA sentencing enhancement under 18 U.S.C. § 924(e)(2)(B)(i). He urges that, because robbery is not an offense enumerated in the ACCA, nor does it have "as an

---

[7] We further note that the Pennsylvania Rules of Professional Conduct, which govern Mr. Thornton and Mr. Ulrich's professional behavior, did not prohibit the Federal Defender from representing Hill because Hill's federal firearms case was not the "same or substantially related" to Nicholson's petty offense. Pa. Rules of Prof'l Conduct 1.9. As the District Court recounted, even Mr. Ulrich acknowledged that the two cases were "not related" to one another. *Hill*, 2015 WL 6560632, at *6.

14

element the use, attempted use, or threatened use of physical force against the person of another" such that it could fall under § 924(e)(2)(B)(i), his conviction for "robbery by force however slight" necessarily falls under the residual clause of the ACCA, which the Supreme Court ruled unconstitutionally vague in *Johnson*, 135 S. Ct. at 2563.

We need not weigh in on the merits of this argument, however, because Hill has failed to identify and argue the critical issue in his brief and consequently has waived the argument entirely. That is, Hill bases his argument on a Pennsylvania robbery statute, which criminalizes robbery "by force however slight," 18 Pa. Cons. Stat. § 3701(a)(1)(v), and which, as he notes, the Government has conceded in another case does not have the force element necessary to fall under § 924(e)(2)(B)(i) of the ACCA. *United States v. Blair*, No. 12-4427, Appellee's Br. 31-32 & n.10 (3d Cir.) (conceding that a conviction based on "force however slight" could only fall under the residual clause of the ACCA). But Pennsylvania law has no relevance whatsoever to Hill's claim on appeal. Hill was convicted of robbery in Virginia, which defines the offense under common law and punishes it pursuant to Va. Code. § 18.2-58—a statute which makes no reference to "force however slight." Yet Hill presented no argument to the District Court or to this Court as to the language of that statute or the definition of robbery under Virginia common law.

Hill's failure to raise arguments as to the relevant statutes and case law constitutes a waiver of the argument on appeal, and we will affirm the District Court's ACCA ruling on that ground without opining on the merits. *See United States v. Pelullo*, 399 F.3d 197,

15

222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").[8]

## III. Conclusion

For the foregoing reasons, we will affirm Hill's conviction and sentence.

---

[8] We note that, twenty years ago, the Fourth Circuit concluded that the "violence or intimidation" required for a conviction of robbery under Virginia law amounts to the type of "physical force" described in the ACCA. *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995). Since that time, however, in addressing other issues, the Fourth Circuit has given mixed signals as to whether it still views *Presley* as good law. *Compare United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016), *with United States v. Gardner*, 823 F.3d 793, 804 (4th Cir. 2016); *see also United States v. Winston*, No. 3:01-cr-00079, 2016 WL 2757451, at *4-5 (W.D. Va. May 11, 2016) (discussing disagreement in the district courts on this question). We will not wade into these murky waters without any argument or briefing by Hill either in the District Court or on appeal.